## LATHAM et al. v. UNITED STATES.*

(Circuit Court of Appeals, Fifth Circuit. October 4, 1915.)

No. 2634.

1. GRAND JURY &—39—PROCEDURE—PRESENCE OF UNAUTHORIZED PERSON— CLERK IN DISTRICT ATTORNEY'S OFFICE.

The presence of a clerk in the district attorney's office, who was an expert stenographer, and who, at the district attorney's instance, took stenographic notes of the testimony of witnesses examined by the grand jury on which the indictment was found, although he took an oath before the clerk of the court to keep the proceedings secret, was a substantial violation of defendant's right, and ground for quashing the indictment, although no prejudice therefrom was alleged or shown; Act June 30, 1906, c. 3935, 34 Stat. 816 (Comp. St. 1913, § 534), only authorizing certain persons, not including the district attorney's clerk and stenographer, to participate in grand jury proceedings.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 82; Dec. Dig. &—39.]

2. CRIMINAL LAW &—730—TRIAL—REMARKS OF PROSECUTOR.

In a prosecution for devising a fraudulent scheme for obtaining money, etc., by means of the post office, by advertised medical treatment, where the issue was whether the scheme was devised with a fraudulent intent, and where only one witness testified that he had paid money to defendants, the district attorney's remark, in closing, that, had the train not been late, he would have had another witness, who would have testified that he had been defrauded though the court at once cautioned the jury not to consider it was prejudicial to defendant's right to a verdict on the testimony of witnesses.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1693; Dec. Dig. &—730.]

In Error to the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

George B. Latham and Frank Flood were convicted for devising a fraudulent scheme for obtaining money, etc., by means of the post office, and they bring error. Reversed and remanded, with instructions to grant the motion to quash the indictment.

Wm. H. Atwell, of Dallas, Tex., for plaintiffs in error.

James C. Wilson, U. S. Atty., and Wm. E. Allen, Asst. U. S. Atty., both of Dallas, Tex., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and CALL, District Judge.

---

&—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied November 19, 1915.

CALL, District Judge. On January 24, 1914, George B. Latham, Frank Flood, and J. H. Terrill were, in the District Court for the Northern District of Texas, indicted in four counts, charged with devising a fraudulent scheme for obtaining money, etc., by means of the post office establishment of the United States, acting under the names of the Terrill Medical Institute and the New Method Treatment Company.

[1] On January 30, 1914, a motion to abate the indictment was made. This motion was denied, and subsequently a motion for continuance was granted Terrill, and Latham and Flood put on trial and convicted. These latter sue out writ of error, and assign as error the action of the court in denying the motion to abate, and is contained in the twenty-second assignment of error, as follows:

"The court erred in overruling defendants' motion to abate, because, from the said motion and by the testimony taken thereunder, it was clearly shown to the court that an unauthorized person was present in the grand jury room during the taking of testimony by that body relating to this indictment."

This assignment must be disposed of at the threshold of the case. If it is well taken, it disposes of this writ of error, and any decision on the other assignments would be obiter.

The testimony contained in the bill of exceptions shows that one Lantz, who was a clerk in the office of the district attorney, and an adept stenographer, after having subscribed an oath before the clerk of the court to keep secret the proceedings of the grand jury, at the instance of the district attorney, was present in the grand jury room and taking stenographic notes of the testimony of witnesses examined by the grand jury in investigating this case, and upon which testimony the indictment in this case was found. The question of whether the presence of this unauthorized person in the grand jury room during the investigation by them of this case is good ground to abate and quash the indictment found is squarely presented to this court.

The decisions of the courts on this question are not uniform. Different courts have taken different views on this question. From very early times the proceedings before the grand jury, in taking testimony and in deliberating thereon, are required to be held in secret. It is a rule of universal application wherever the system of grand juries are in effect. Wigmore on Evidence, § 2360 et seq.; Greenleaf on Evidence, § 252 et seq. This rule rests upon public policy and in furtherance of justice. It is intended for the protection of the government and the citizen. The rights thus secured cannot be invaded without detriment to each. The cases where this rule may be waived by the courts are well defined, and are based upon sound principle.

Mr. Greenleaf and Mr. Wigmore discuss the reasons for the rule, and in Wigmore will be found an instructive and interesting discussion of the reasons for, and the history of, the rule, as well as the circumstances under which courts may waive its requirements and permit those proceedings to be disclosed. The statutes of the several states recognize it, both by prescribing the oath to be taken, and

by providing what persons, other than the grand jurors and the witness being examined, may be present, during such examination.

We may start, then, with this rule firmly imbedded in our jurisprudence. And it must be maintained until the legislative branch of the government sees fit to change it. Judge Bellinger, in the Edgerton Case, says:

"It is beyond question that no person, other than a witness undergoing examination and the attorney for the government, can be present during the sessions of the grand jury."

And, further, he says:

"There must not only be no improper influence or suggestion in the grand jury room, but, as suggested in Lewis v. Commissioners, 74 N. C. 194, there must be no opportunity therefor. If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury." United States v. Edgerton (D. C.) 80 Fed. 375.

In that case the unauthorized person was an expert, but on principle the difference in occupation could scarcely be material. Judge Thomas, in the Rosenthal Case, refers with approval to the Edgerton Case, and, after an exhaustive and learned discussion of the rule, has this to say:

"The inconvenience of resubmitting the matter to the grand jury is temporary; the injustice of denying the defendants investigation pursuant to the law of the land would be perpetual." United States v. Rosenthal (C. C.) 121 Fed. 862.

In this case the person before the grand jury was a lawyer acting under instructions from the Attorney General. No improper conduct charged and no claim of improper evidence produced before the grand jury. It was prior to the act of 1906, empowering the Attorney General and certain persons at his request to appear before the grand jury. His presence and participation in the proceedings before the grand jury was held to invade the rights of the defendant, and the indictments were quashed. In United States v. Virginia-Carolina Chemical Co., (C. C.) 163 Fed. 66, the Rosenthal Case was followed, and the indictment quashed.

United States v. Heinze (C. C.) 177 Fed. 770, was another case of an expert before the grand jury, under a special appointment by the Attorney General, to aid the district attorney. The indictment was quashed. Judge Hough in that case says:

"If there be a settled method of conducting the deliberations of grand jurors, established by generations of procedure, based on the experience of many courts in many communities, and evidenced by the decisions of authoritative tribunals, such method must be followed until the Legislature sees fit to overturn the old rule."

In the cases of United States v. Rubin (D. C.) 218 Fed. 245, and United States v. Phila. & R. Ry. Co. (D. C.) 221 Fed. 683, the courts quashed the indictments because of the presence of stenographers in the grand jury room. The case of United States v. Wm. Rockefeller et al. (D. C.) 221 Fed. 463, was commented upon by Judge Thompson in the Phila. & R. Ry. Co. Case, and the reasoning of Judge Sessions in the Rockefeller Case to some extent criticized. Judge Sessions says:

"It seems to me that, if the testimony given before the grand jury may not, under any circumstances or conditions, be made a matter of record and reference, we are opening the door very wide, and inviting, not only perjured and incompetent testimony, but even gossip and conjecture, before the grand jury. * * * And, if no safeguards are provided, many witnesses may be influenced or persuaded or induced to indulge in statements and accusations which ought not to be permitted or tolerated."

Judge Thompson pertinently remarks:

"If a record is to be kept of the proceedings before the grand jury upon these grounds, it should be equally open to the defendant and to the government."

And Judge Hough's language in the Heinze Case, above referred to, is equally pertinent:

"If there be a settled method of conducting the deliberations of grand jurors, established, * * * such methods must be followed until the Legislature sees fit to overturn the old rule."

In 1906 Congress had this whole matter before it, when the act allowing certain persons to participate in proceedings before grand juries was passed, and the discussions on that act will show that the rule, as established by the decisions in several cases referred to, was recognized. Had Congress so desired, a record of the proceedings before grand juries could and would have been authorized under proper precautions.

It seems to me that the reasoning of Judge Sessions is faulty in many respects. How would the presence of a stenographer, and the fact that he was taking down the testimony of the witnesses, discourage perjury? How would it prevent incompetent testimony, or even gossip and conjecture, or how would it prevent witnesses from being influenced or persuaded or induced to indulge in statements or accusations? The only possible office such a stenographic report of the testimony could serve would be that of refreshing the memory of a witness as to those statements, in the event of a prosecution for perjury committed before the grand jury, or in case of impeachment at a subsequent trial. It seems to me that the learned judge overlooked the fact that the district attorney, or his assistant, has a right to be, and usually is, in important cases almost certainly, present at examination of witnesses; and certainly a court would not be justified in the assumption that this government official would prostitute his office to influence or persuade or induce witnesses to indulge in statements or accusations. If he was so inclined, the mere presence of a stenographer, of his own selection, would deter him but little.

It would, no doubt, be very convenient and of the utmost assistance to the prosecuting officer in the preparation of his case for trial to have the stenographic report of the testimony of the witnesses given before the grand jury, and such an argument might with propriety be addressed to the Congress to induce it to pass such a law, but comes with no force to a court to authorize an invasion of the right of a defendant. Under the act of Congress there are at least 16 members of the grand jury, each of whom may be called in a proper case to testify what a witness has said before them; certainly, then, the presence of a stenographer is not necessary to prove the witness' testimony.

In 1906, Congress passed an act (34 Stat. 816, c. 3935), before referred to, empowering certain persons to participate in grand jury proceedings. This act can have no application to this case, except to show a recognition of the rule theretofore existing and announced in the Edgerton Case. Most of the cases taking a contrary view are based upon the argument of convenience, as in the Rockefeller Case; but the answer to that whole argument is that Congress has authorized certain persons to be present at grand jury sessions and take part therein, but stenographers and clerks to district attorneys are not in that class.

Contention is made that there is no allegation or proof that these defendants were prejudiced by the presence of the stenographer. Section 1025, R. S. (Comp. St. 1913, § 1691), and the rule and decisions on pleas in abatement are appealed to to validate the indictment in this case. Of course, if this were merely an irregularity or informality, and no prejudice alleged and proven, then the indictment ought not to have been quashed. In none of the cases I have referred to was there any prejudice shown, save probably two cases. In all of them participation in those proceedings, some more, some less, was shown. Will the amount of participation be the criterion for decision as to whether it is a substantial right or an informality? Or is it sufficient to show participation by an unauthorized person?

The right of the citizen to an investigation by a grand jury pursuant to the law of the land is invaded by the participation of an unauthorized person in such proceedings, be that participation great or small. It is not necessary that participation should be corrupt, or that unfair means were used. If the person participating was unauthorized, it was unlawful. And this would be an unlawful invasion of the right of the citizen, and unless this unlawful invasion is rectified by a proper tribunal at the instance of the citizen, it becomes a justified illegality; and in the words of Judge Hough:

"A justified illegality, however trivial of itself, is of the highest importance."

We cannot, therefore, assent to the doctrine that the presence in the grand jury room of the stenographer, and his participation in such proceedings to the extent of taking testimony of witnesses before the grand jury, is an informality, and, unless prejudice is alleged and shown, the motion should be denied. It is in my judgment a matter of substance. The statute relied upon to save this indictment has been on the statute books for many years, and was no doubt considered by the courts in the decisions referred to. We are therefore of opinion that the assignment is sustained, and the motion should have been granted, and the indictment quashed.

[2] While the foregoing disposes of this case, and while, as I have said before, it is obiter to discuss and make any ruling on the other assignments, yet we think it timely and proper to notice the twenty-seventh assignment of error, that on a new indictment and retrial of this case the same fault shall not again occur.

There could have been no doubt upon the minds of the jury and the court of the fact the mails were used and intended to be used to carry out the plans of the defendants, and thus the only live question in the

case was whether the scheme was devised with a fraudulent intent. After the defendants had closed their testimony, the government in rebuttal introduced a witness, Faulkner, whose testimony tended to prove that he had paid $75, without the benefit from the treatment received. In argument the defendants' counsel commented on the fact that only one witness had been produced to show that any money had been received, etc., a proper comment on his part. The district attorney, in closing the case for the government, made the statement that, had the train not been three hours late, he would have had another witness, who would have testified that he also had been defrauded. The defendants' counsel immediately objected, and the objection was sustained by the court, and the jury properly cautioned not to consider said statement of counsel.

The defendants' counsel assign these remarks as error in his twenty-seventh assignment. The almost unbroken line of authorities hold that it is to the action of the court upon the objection to which error may be assigned; that, if the court stops counsel and cautions the jury, this cures the violation of the defendants' right to a trial and verdict on the testimony of witnesses, and not statements of counsel not based on testimony. And in ordinary cases this is the correct rule. Yet in each of the cases expressions will be found which militate against this view in exceptional cases.

Every one must realize that there are exceptional cases where, although the court does stop counsel, and does caution the jury, the impression has been made by the remarks of counsel, and although the jury honestly try to ignore that impression, it still enters into and forms a part of the verdict. In such cases the trial court should set aside the verdict on motion for a new trial. The language of Justice Fowler, in Tucker v. Henniker, 41 N. H. 325, is pertinent, and applies with great force to criminal prosecutions:

"Yet the necessary effect is to bring the statements of counsel to bear upon the verdict with more or less force, according to circumstances; and if they in the slightest degree influenced the finding, the law is violated, and the purity and impartiality of the trial tarnished and weakened. * * * It is unreasonable to believe the jury will utterly disregard them. They may struggle to disregard them. They may think they have done so, and still be led involuntarily to shape their verdict under their influence. That influence will be more or less, according to the character of the counsel, his skill and adroitness in argument, and the force and naturalness with which he is able to connect the facts he states with the evidence and circumstances of the case. To an extent not definable, yet to a dangerous extent, they unavoidably operate as evidence which must more or less influence the minds of the jury, not given under oath, without cross-examination, and irrespective of all those precautionary rules by which competency and pertinency are tested."

The prosecuting officer is usually a person of considerable influence in the community, and the fact that he represents the government of the United States lends weight and importance to his utterances. He does not occupy the position of a defendant's counsel, but appears before the jury clothed in official raiment, discharging an official duty. The realization of these considerations should lead the officer to the exercise of the utmost care and caution in making statements before the jury, and should induce him to confine his arguments and statements

to the testimony of the witnesses, in order that no right of the defendant is violated.

It will be borne in mind in this case that the great volume of testimony was given by post office inspectors, writing decoy letters and giving simulated symptoms, and that the only witness who had in reality consulted the defendants was Faulkner. While the fact that any one was actually defrauded may not have been material, yet the fact that people had been defrauded by the scheme would, necessarily, have had great weight with the jury in arriving at their conclusion that a scheme had been formed with intent to defraud. It seems to me impossible to say that the remarks of the district attorney were not prejudicial to the defendants' right to a verdict on the testimony of witnesses. State v. Underwood, 77 N. C. 502; Jenkins v. N. C. Ore Dressing Co., 65 N. C. 563.

For the reasons hereinbefore given, the judgment of the District Court is reversed, and the cause remanded to the trial court, with instructions to grant the motion to quash the indictment.