## UNITED STATES v. GOLDMAN et al.

District Court, D. Connecticut. September 25, 1928.

No. 3588.

John Buckley, U. S. Atty. and John A. Danaher, Asst. U. S. Atty., both of Hartford, Conn.

Samuel Falk, of New York City, for defendant Goldman.

Walter J. Walsh, of New Haven, Conn., for defendants Florio and Monroe.

Thomas J. Spellacy, of Hartford, Conn., for defendants Pike and Stevens.

J. Moss Ives and Thomas A. Keating, both of Danbury, Conn., for defendant the Solvents Recovery Co.

Benjamin Slade, of New Haven, Conn., for defendant Morse.

Abraham S. Weissman, of New Haven, Conn., for defendants Comen and Connecticut Alcohol Distributors Co., Inc.

THOMAS, District Judge. The indictment charges ten individuals and two corporations with conspiracy to violate the National Prohibition Act (27 USCA). After the enumeration of the names, they are then described as "the defendants herein." Then follows the names of 12 additional individuals, who, as is alleged in the indictment, "by reason of the fact that they testified before the said Grand Jury concerning the matters herein charged, are not herein indicted."

One of the defendants has not been apprehended. The rest appeared and have filed various pleadings attacking the validity of the indictment for the reasons set forth. The nine individuals and the two corporations have filed pleas in abatement, the legal sufficiency of which the government attacks by demurrers; five individuals and the two corporations also filed motions to quash, and, in addition to their pleas in abatement and motions to quash, two individual defendants have filed pleas in bar. To these pleadings, other than the pleas in abatement, the government has either answered, generally denying defendants' allegations, or has filed motions to strike from the files; but, as the various questions raised will be later discussed separately, it is not necessary now to set forth what is in the motions, pleas, answers, or demurrers, as the end sought by the defendants

is the dismissal of the indictment for the reasons alleged in their pleadings.

The motions to quash and pleas in abatement are, in each instance, predicated upon two principal allegations: (1) That there was present in the grand jury room an unauthorized person who acted as a stenographer; and (2) that the indictment is based (a) wholly upon incompetent evidence, and (b) insufficient and hearsay evidence, and additionally, as to Morse, Stevens, and the Solvents Recovery Company, that "the grand jury * * * had not before it any evidence whatever that was competent or admissible as proof of any material matters embraced in the alleged charges. * * * "

 The language of the pleas in abatement is identical with that of the motions to quash. Both procedures have been adopted by counsel, in order to avoid a possible denial of their claims upon purely technical grounds. It may, perhaps, be admitted that in the present instance the question of procedure is unimportant. Nevertheless it may be well to point out that ordinarily motions to quash indictments are based upon matters suggested by the record, whereas pleas in abatement are founded upon allegations of fact dehors the record. In May v. United States, 236 F. 495, where the Circuit Court of Appeals for the Eighth Circuit had under consideration a question somewhat similar to the one at bar, it was held by Judge Carland that plea in abatement is the proper remedy.

 Concerning the alleged unauthorized person in the grand jury room the pleas in abatement in each instance allege that:

"There was present in the grand jury room with the grand jury that found the true bill or indictment, * * * and while said grand jury was examining witnesses and conducting its official grand jury proceedings, one Charles T. Roberts, Esq., who acted as a shorthand writer or stenographer, and who took down, in the presence of the said grand jury, the evidence and the testimony adduced in said grand jury room. The said Charles F. Roberts, Esq., though an attorney and counselor at law, did not, while in said grand jury room, with said grand jury, assist the district attorney in the discharge of his duties within the meaning of the Act of June 30, 1906, but was a mere reporter or stenographer, and as such was an improper person to be present with the grand jury in the grand jury room while it examined witnesses and conducted said grand jury proceedings, and said Charles F. Roberts could not be authorized under the laws of the United States to be present with the grand jury while it was sitting as such, and act as a stenographer or reporter of the testimony given by witnesses there examined."

Counsel for defendants claim that, under the circumstances of this case, the presence of a stenographer, acting as such, within the grand jury room during the time evidence was being adduced from witnesses was unlawful, and that such illegality invalidates the indictment, and some of the cases cited in support of this contention are United States v. Rosenthal (C. C.) 121 F. 862; United States v. Virginia-Carolina Chemical Co. (C. C.) 163 F. 66, 70; United States v. Philadelphia & R. Ry. Co. (D. C.) 221 F. 683; United States v. Heinze (C. C.) 177 F. 770; Latham v. United States (C. C. A.) 226 F. 420, L. R. A. 1916D, 1118; United States v. Farrington (D. C.) 5 F. 343; United States v. Kilpatrick (D. C.) 16 F. 765; United States v. Edgerton (D. C.) 80 F. 374.

It is also urged by defendants that, under the authority of United States v. Philadelphia & R. Ry. Co., 221 F. 683, the appointment of Mr. Roberts by the Attorney General in accordance with the provisions of the Act of June 30, 1906 (5 USCA § 310), under the guise of an assistant to the district attorney to be present in the grand jury room, but in fact for the purpose of taking down testimony stenographically, cannot be allowed, and they assert, as is held by Judge Thompson in that case, that it is perfectly apparent that there is expressed in the act no such intention on the part of Congress. The act reads as follows:

"*Conduct of Any Legal Proceedings Which District Attorneys are Authorized to Conduct.* The Attorney General or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provision of law, may, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys now are or hereafter may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought."

A great deal of discussion contained in the defendants' briefs centers around the question of whether, under this act, an attorney, appointed by the Attorney General of the United States to *conduct* civil or criminal proceedings, is one who must take charge of the same to the exclusion of the local United States district attorney, whose duties are

defined by section 771 of the Revised Statutes (28 USCA § 485). It is argued that such an appointment does not make him an assistant, or a special assistant, to the local United States attorney, but that he supersedes the latter. As Mr. Roberts concededly did not supersede the local United States district attorney in the matter of conducting the proceedings before the grand jury, which proceedings resulted in this indictment, the contention is made that he could only have been a special assistant to the United States district attorney for Connecticut, appointed under sections 363 and 366 of the Revised Statutes. Section 363 provides:

"The Attorney General shall, whenever in his opinion the public interest requires it, employ and retain, in the name of the United States, such attorneys and counselors at law as he may think necessary to assist the district attorneys in the discharge of their duties, and shall stipulate with such assistant attorneys and counsel the amount of compensation, and shall have supervision of their conduct and proceedings." 5 USCA § 312.

Section 366 provides:

"Every attorney or counselor who is specially retained, under the authority of the Department of Justice, to assist in the trial of any case in which the government is interested, shall receive a commission from the head of such department, as a special assistant to the Attorney General, or to some one of the district attorneys, as the nature of the appointment may require, and shall take the oath required by law to be taken by the district attorneys, and shall be subject to all the liabilities imposed upon them by law." 5 USCA § 315.

From these provisions it is clear that special assistants, appointed under the authority of these provisions, are limited in their functions to assisting the local United States district attorney in the *trial* of cases. Under these sections, Judge McCall, in United States v. Virginia-Carolina Chemical Co. (C. C.) 163 F. 66, held that they must be construed together, and that the Attorney General was not authorized to appoint special assistants to a district attorney, with authority to appear before and participate in the proceedings of a grand jury, and the presence of two such attorneys, specially appointed for a particular case before the grand jury, rendered the indictment invalid. It was also held that the proceeding before the grand jury was not the *trial* of the case, and that, therefore, the presence of such an assistant before the grand jury was unauthorized. The reasoning which resulted in this conclusion is sound. If Mr. Roberts was only a special assistant to the local United States attorney, and acted in no other capacity, the conclusion would follow, upon the authority of the case above cited, that his presence in the grand jury room would invalidate any indictment thereafter found.

In opposition to the authorities relied upon by defendants, counsel for the government cite and rely upon decisions which, it is claimed, do not support the contention made by counsel for the defendants. In United States v. Simmons (C. C.) 46 F. 65, it was held that the presence of a stenographer was legal, upon the ground that he was *an employee of the district attorney.* In the case of United States v. Rockefeller (D. C.) 221 F. 462, there was a plea in abatement to the indictment. The person who was present was *a clerk and assistant to the district attorney,* though he was not an attorney at law. He acted as a stenographer. Judge Sessions said (page 467 of 221 F.):

"More than 50 years ago, in 1852, Mr. Justice Nelson, in this circuit, when the question was squarely presented to him, held that the presence of an assistant and clerk to the district attorney did not vitiate an indictment returned by the grand jury, whose sessions he attended. United States v. Reed, 27 Fed. Cas. [No. 16,134] 727-734. That decision went unchallenged for very many years. In 1891, more than 23 years ago, a judge of this court, again passing upon the exact question which is here presented, affirmed the ruling in the earlier case. United States v. Simmons (C. C.) 46 F. 65. The rule of law thus announced has been accepted and acted upon in this district from that time to the present. In two later cases in this district the rule of law announced in the earlier decisions, has been at least impliedly sanctioned and affirmed; Judge Hough specifically, although obiter, holding that the presence of a stenographer in the grand jury room during the proceedings did not invalidate an indictment. United States v. Heinze (C. C.) 177 F. 770-772; United States v. Rosenthal (C. C.) 121 F. 862."

But Judge Sessions approved of the doctrine that the prohibition against the presence of outsiders in the grand jury room during the taking of testimony arises by reason of the requirement of secrecy concerning the proceedings. If the aid of the statute is not invoked, the question at once arises: Why does the Attorney General deem it necessary to write the letter which is clearly based on the wording of the statute? It is conceded that the following is the letter sent to Mr.

Roberts to justify his presence before the grand jury:

"Department of Justice,

"Washington, D. C., January 10, 1927.

"Mr. Charles F. Roberts, Hartford, Conn. —Sir: You are hereby appointed a special assistant to the United States attorney, district of Connecticut, under the authority of the Department of Justice, to assist in the investigation and prosecution of alleged violations of the National Prohibition Act, and in that connection you are specifically directed to conduct, in the district of Connecticut, or in any judicial district where the jurisdiction thereof lies, any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys are authorized by law to conduct.

"Your compensation will be determined by the Attorney General upon the conclusion of your services, and will be paid from the appropriation for "Miscellaneous Expenses, United States Courts." Please execute and return the inclosed oath of office.

"Respectfully,

"Jno. G. Sargent, Attorney General.

"Through the United States Attorney, Hartford, Conn."

This court, in 1914, in the case of United States v. Rubin, 218 F. 245, held that the presence of a stenographer, appointed and sworn, was not authorized by any law, and that his presence before the grand jury voided the indictment. No appeal was taken from that decision, and it has not been specifically overruled in any decision by the Circuit Court of Appeals in this circuit. In the case at bar the government contends that the Rubin decision was impliedly overruled in this circuit in Wilson v. United States, 229 F. 344, decided in 1916. In that case Judge Lacombe, speaking for the Circuit Court of Appeals (on page 347 of 229 F.) said:

"Error is further assigned to a refusal of the trial judge to quash or abate the indictment 'because of the presence in the grand jury of an unauthorized person during the taking of the testimony relating to the indictment.' This person was one of the official staff of the district attorney; he was present only while testimony was being taken and all that he did was to take down in shorthand the testimony of the witnesses. The question presented is: Does the sanction of secrecy which the common law has always given to proceedings before grand juries preclude the use of a fit and properly appointed stenographer from recording the testimony adduced before them?

"Apparently there have been different answers to this question in different districts; but in this circuit, for upwards of 60 years, it has been uniformly held that the presence of a proper shorthand reporter, who merely recorded the testimony as it was given and did not attend at the deliberations of the grand jury did not invalidate an indictment. See United States v. Reed, 27 Fed. Cas. 727 [No. 16134] decided in 1852 by Judge Nelson, who said: 'That has been the practice, to my knowledge, without question, ever since I have had any connection with the administration of criminal justice.' See, also, United States v. Simmons (C. C.) 46 F. 65; United States v. Rockefeller (D. C.) 221 F. 462; United States v. Heinze (C. C.) 177 F. 772.

"These decisions refer to the shorthand writer who discharges the important function of preserving an accurate record of the testimony taken; they do not at all indicate that other individuals, whose presence may be more or less convenient or useful, such as expert bookkeepers or accountants, may attend, except as witnesses. The Circuit Court of Appeals in the Fifth Circuit (Latham v. United States, 226 F. 420 [L. R. A. 1916D, 1118]), has reached a different conclusion, and in its full and careful opinion will be found a strong presentation of the reasons for maintaining a strict observance of a rule which originated before there were shorthand writers. Nevertheless, we are not persuaded to abandon the well-settled and long-continued practice in our own circuit. * * *

"Moreover, this stenographer was no chance man called in by a district attorney for this case and merely sworn to take and transcribe his notes of that investigation accurately. He was a regular clerk and assistant to the district attorney, appointed by the Attorney General of the United States to an office with prescribed duties and fixed tenure. And he took the oath required from all government officials to bear allegiance and 'well and faithfully to discharge the duties' of his office during the term of his incumbency.

"Plaintiff in error cites the act of Congress of 1906 (34 Stat. at Large, p. 816). * * * It is contended that this [Act of June 30, 1906, quoted supra] is an exclusive enumeration of all persons who may be present at any time in the grand jury room when testimony is being taken. We do not so construe the act; it is not at all concerned with that subject, dealing only with the 'conduct of legal proceeding' and increasing the power of the Attorney General at the expense of

the exclusive powers of the district attorneys."

The attention of the court is called by counsel for defendants to the fact that the statement by Judge Lacombe in the opinion to the effect that in this circuit for upwards of 60 years it has been uniformly held that the presence of a "proper" shorthand reporter, who merely records the testimony as it is given, and does not attend at the deliberations of the grand jury, does not invalidate an indictment, contains an error of fact to the effect that, while it may be true of the rest of the Second circuit, it is not the fact in Connecticut, and that the learned judge meant district instead of circuit. But, as he was writing for the Circuit Court of Appeals, we are bound by what he said, and would be governed thereby, if Mr. Roberts legally fitted the limitations embraced by the controlling facts on which that decision was based, which may be summarized as follows:

(a) A stenographer who is "one of the official staff of the district attorney";

(b) "Fit and properly appointed";

(c) A well-settled and long-continued practice to employ stenographers;

(d) A stenographer who is "no chance man called in by a district attorney for this case, and merely sworn to take and transcribe his notes * * * accurately";

(e) One who "was a regular clerk and assistant to the district attorney appointed by the Attorney General of the United States to an office with prescribed duties and fixed tenure";

(f) And finally one who "took the oath required from all government officials to bear allegiance and 'well and faithfully to discharge the duties' of his office during the term of his incumbency."

The above limitations, and those only, qualify the doctrine expressed in United States v. Edgerton (D. C.) 80 F. 375. On page 375 Judge Bellinger said:

"It is beyond question that no person, other than a witness undergoing examination, and the attorney for the government, can be present during the sessions of the grand jury. The rule is inherent in the grand jury system with all the force of a statutory enactment. * * * The rule, in its spirit and purpose, admits of no exception. * * * If the presence of an unauthorized person in the grand jury room may be excused, who will set bounds to the abuse to follow such a breach of the safeguards which surround the grand jury?"

It is indeed unfortunate that on a matter of this importance there should not be a rule of uniform application throughout the United States, and it is to be hoped that a statute regulating the procedure may yet be forthcoming. In the meantime, however, it is certain that the Circuit Court of Appeals for the Second Circuit has spoken, and this court is bound by that decision in cases involving similar situations. If there be no uniformity in the districts and circuits throughout the United States, there should, at least, be uniformity within the boundaries of the circuit. Being in the Second circuit, we are not free to follow the decision of the Circuit Court of Appeals for the Fifth Circuit in Latham v. United States, 226 F. 420, L. R. A. 1916D, 1118, which Judge Lacombe characterized as a full and careful opinion and a strong presentation of the reasons for maintaining a strict observance of the rule. In that opinion legal principles were discussed and the reasoning is based upon authority. The decision in the Wilson Case is, as we read it, based partly upon convenience and expediency, but this court is bound by that decision—even though one may not agree with the argument. So, if the Circuit Court of Appeals for this circuit holds that the employment of a "proper" stenographer before the grand jury sitting in the Southern district of New York constitutes no infraction of law, I would be unable to hold that the employment of a "proper" stenographer before the grand jury sitting in the district of Connecticut is illegal.

In the opinion of this court the remedy lies with the Congress, and it is not for the courts to extend the plain intendment of the Act of June 30, 1906, beyond what is contemplated within the provisions of the act. And if, as Judge Sessions held in the Rockefeller Case, the statute has no application, and if, as Judge Lacombe held in the Wilson Case that the statute is not an exclusive enumeration of all persons who may be present at any time in a grand jury room when testimony is being taken, and does not prohibit the presence of a "proper" stenographer because that act is not concerned with that subject, but deals only with the conduct of legal proceedings, and if, as Judge Hough in the Heinze Case, supra, said on page 773 (177 F.): "It is in my judgment entirely clear that the intent of the act of 1906 was plainly not to authorize the introduction into the grand jury room of previously unauthorized laymen, but to enlarge the number of office holding lawyers who might attend before the jury to render assistance in matters of law alone"—then we have recourse only to the rule of the common law which directs secrecy

and forbids the presence of any one save the witnesses and the district attorneys who conduct the investigation.

In the case at bar the government does not justify the presence of Mr. Roberts in the grand jury room on the ground that he was a member of the "official staff of the district attorney," and/or "a proper shorthand reporter," or that he was a "regular clerk and assistant to the district attorney," and/or that he was not a mere "chance man called in by the district attorney for this case," but admits by the demurrers, supplemented by evidence, to wit, the commission from the Attorney General, that his presence there was under and by virtue of the commission received from the Attorney General of the United States, already quoted, supra.

The authority of this commission is the Act of June 30, 1906, quoted supra. In that act is found this limitation: "May, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding." As we understand it, the commission which may be issued under that act *must* designate the specific case or cases to which the employment relates and the district or districts to which it extends. If this is not so, it would follow that the Attorney General of the United States could, under the act now under discussion, issue a roving commission without any limitations, extending to every district in the United States and embrace all criminal investigations. No such power is conferred by the act. This view is strengthened by the provisions of section 365 of the Revised Statutes (section 540, Comp. St.), which provide as follows:

"No compensation shall hereafter be allowed to any person, besides the respective district attorneys and assistant district attorneys for services as an attorney or counselor to the United States, or to any branch or Department of the Government thereof, except in cases specially authorized by law, and then only on the certificate of the Attorney General that such services were actually rendered, and that the same could not be performed by the Attorney General, or Solicitor General, or the officers of the Department of Justice, or by the district attorneys." 5 USCA § 314.

Section 771 of the Revised Statutes prescribes the duties of district attorneys. It reads:

"It shall be the duty of every district attorney to prosecute, in his district, all delinquents for crimes and offenses cognizable under the authority of the United States, and all civil actions in which the United States

are concerned, and, unless otherwise instructed by the Secretary of the Treasury, to appear in behalf of the defendants in all suits or proceedings pending in his district against collectors, or other officers of the revenue, for any act done by them or for the recovery of any money exacted by or paid to such officers, and by them paid into the Treasury." 28 USCA § 485.

A regular officer of the Department of Justice, under his commission as such and one qualifying oath, permits him at all times and places to appear before grand juries; but such is not the case with one specially appointed under the Act of June 30, 1906. The latter must, as we view it—

(a) Be an attorney at law;

(b) Hold a commission from the Attorney General of the United States, specifying by name the case or cases to which his employment relates;

(c) Name specifically the district or districts where the powers and privileges of such appointee may be exercised;

(d) Take the prescribed oath in each district where such appointee actually operates and an indorsement of such oath on the commission or attached thereto;

(e) File with the clerk of the court such commission and oath prior to the time when such appointee appears before the grand jury.

And it seems clear that he must *conduct* the proceedings. An examination of the Roberts commission, which is in evidence, and the conceded fact that Mr. Roberts is not a regular employee or attaché of the district attorney's office, compels the conclusion that he was an unauthorized person in the grand jury room under the allegations of the plea in abatement.

The Act of June 30, 1906, does not permit the Attorney General to appoint stenographers to appear before the grand jury, but only "attorneys and counselors," and the latter may be compensated only in cases where the services could not be performed by the designated government officials described in section 365, Revised Statutes, supra, and then only on the required certificate of the Attorney General as there provided.

It should be noted that the Attorney General of the United States, in his report to Congress dated December 5, 1927, at page 5, said:

"I recommend again the enactment of legislation *authorizing* the presence of stenographers in the grand jury room as a necessary aid to the better administration of justice."

This recommendation was made after this case had been submitted to the court. If, under the present law, chance stenographers in grand jury rooms are lawful, or the Attorney General believes power is vested in him to make such appointment under the guise of an assistant to the district attorney, no necessity for the suggested legislation is apparent. There is a strong presumption that the Department of Justice is familiar with the present status of the law on this subject, and evidently is not satisfied that authority exists for the presence of a stenographer in the grand jury room proceedings, except possibly in cases embracing the state of facts found in the Wilson Case, supra.

The commission here under consideration does not specify any particular case, or give the name of any particular offender who may be proceeded against, either alone or with others associated with him. On the contrary, the commission provided that Mr. Roberts was "to assist in the investigation and prosecution of alleged violations of the National Prohibition Act, and in that connection you are specifically directed to conduct * * * any kind of legal proceedings, * * * including grand jury proceedings." From this language it is clear that an appointee under it could replace or act with the duly constituted district attorney for this district, and either take charge of or participate in investigations for alleged violations of the act. But the Act of June 30, 1906, under which the Attorney General derives his power to issue the commission, cannot be construed so as to give the Attorney General such unlimited powers. The constitutional, statutory, and specifically designated officials only are permitted to perform such duties, except as qualified and extended by the Act of June 30, 1906, and as to the trial of cases under the provisions of Revised Statutes, §§ 363–366.

The conclusion here expressed is not antagonistic to the doctrine laid down in the Wilson Case, which we construe to be an authority for the proposition that in District Courts a stenographer, who is a regular clerk and assistant to the district attorney, appointed by the Attorney General of the United States to the office, with prescribed duties and fixed tenure, and who took the oath required of all government officials, may be present in the grand jury room, if such practice is of long standing in the district.

Upon these considerations, therefore, I am constrained to rule that the first ground alleged in the pleas in abatement, viz. the presence of an unauthorized person in the grand jury room, is well taken, and upon that ground the pleas in abatement are sustained and the demurrers thereto are overruled.

██ The second ground of attack is made up of a series of allegations concerning the adequacy and competency of the testimony taken before the grand jury. A typical claim is that set forth in the following language: "The true bill or the indictment, so far as it affects, relates to or includes this alleged defendant, is based solely on incompetent and insufficient evidence." And in another paragraph it is asserted that the indictment was based on hearsay evidence.

Motions have been made by the government in each instance to strike from the files the motions to quash, and, as already noted, demurrers have been filed to the pleas in abatement. The position taken by the defendants is that the demurrers to the pleas in abatement, of necessity, admit the facts well pleaded, and that the government thereby stands confessed of having procured an indictment upon incompetent and insufficient evidence.

I am unable to adopt this view of the matter. Neither the pleas nor the motions to quash tender any issuable allegations. They do not plead facts or ultimate facts. They plead nothing but legal conclusions. An allegation that evidence is incompetent is a conclusion of law. An allegation that evidence is insufficient to make out a prima facie case, which is the sort of a case necessary to support a true bill, is a conclusion of law. It is fundamental that conclusions of law are not admitted by demurrers.

██ It is requested by the defendants that the court examine the minutes of the grand jury and the assertion is made that if this is done the court will find ample ground for sustaining the defendants in their contention that the evidence before the grand jury was entirely hearsay, incompetent, and insufficient. This may or may not be so. The fact, however, is that neither in this district nor in any other district within this circuit is there any practice allowing inspections of the minutes of the grand jury. The state of New York makes provision for such examination in certain instances, but the rule in the federal courts of this circuit, at least, seems to be opposed to the granting of such an examination. What may not be done directly will not be countenanced by indirection. If this court may not order an inspection of the grand jury minutes on a direct motion made for such purpose, it will not order it upon a plea in abatement, or a motion

to quash, based solely on an allegation that the evidence before the grand jury was hearsay, insufficient, and incompetent.

Whether or not cases may arise under which an inspection of the grand jury minutes may be ordered we need not discuss. One thing, however, seems clear, and that is that such inspection will not be ordered simply upon the allegations of legal conclusions concerning the sufficiency of evidence before the grand jury. In Olmstead v. United States, 19 F.(2d) 842, on page 845, 53 A. L. R. 1472, Judge Gilbert said:

"While it is the rule in many jurisdictions that the court will not inquire into the sufficiency of the evidence before the grand jury, the decisions of the Supreme Court and those of most of the inferior federal courts have been to the effect that an indictment cannot be abated, on account of the admission of incompetent or hearsay testimony, unless it affirmatively appear in the plea that no competent evidence of the commission of the offense charged therein was presented to the grand jury, or unless all of the evidence was unlawfully procured in violation of substantial rights of the accused, so as to subject it to exclusion if offered against him. Holt v. United States, 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138; Chadwick v. United States (C. C. A.) 141 F. 225; United States v. Standard Oil Co. (D. C.) 154 F. 728; Hillman v. United States (C. C. A.) 192 F. 264; McKinney v. United States (C. C. A.) 199 F. 25; Anderson v. United States (C. C. A.) 273 F. 20; United States v. Morse (D. C.) 292 F. 273; United States v. Silverthorne (D. C.) 265 F. 859. And it is uniformly held that a plea in abatement to an indictment, being a dilatory plea and not favored in law, must be pleaded with strict exactness and with certainty, accuracy, and completeness, and must set forth facts, and not conclusions of law, nor evidence of facts, and that every inference must be against the pleader." United States v. Morse (D. C.) 292 F. 273; United States v. Bopp (D. C.) 232 F. 177; United States v. Nevin (D. C.) 199 F. 831, 833; Agnew v. United States, 165 U. S. 36, 45, 17 S. Ct. 235, 41 L. Ed. 624.

■ As previously noted, it is additionally alleged, in behalf of the defendants Morse, Stevens, and the Solvents Recovery Company, in their pleas in abatement, that "the grand jury that found * * * the indictment * * * had not before it *any evidence whatever* that was competent or admissible." This allegation pleads an issuable fact, and not the pleaders' conclusions. The demurrers admit this fact in each case, and the court must accept it as an additional and sufficient ground for sustaining the plea entered by Morse, Stevens, and the Solvents Recovery Company. It will be noted in the Olmstead Case that Judge Gilbert said that the court will not inquire into the sufficiency of the evidence before the grand jury, "unless it affirmatively appear in the plea that no competent evidence of the commission of the offense charged therein was presented to the grand jury." The plea before us meets the test, and the defendants Morse, Stevens, and the Solvents Recovery Company are within the unless clause set forth in the Olmstead Case. The demurrer having admitted the allegation that the grand jury did not have before it any evidence whatever that was competent or admissible, the pleas in abatement of Morse, Stevens, and the Solvents Recovery Company must be sustained on this ground.

Inasmuch as the pleas in abatement, except as to the defendants Morse, Stevens, and the Solvents Recovery Company, fail to meet the rule affecting the ground now under discussion, it follows that the demurrers must be sustained, and the pleas in abatement on such grounds overruled. Except as to the defendants Morse, Stevens, and the Solvents Recovery Company, the demurrers are overruled, where the plea in abatement sets forth no evidence whatever, and as to the other allegations set forth in the plea in abatement the demurrers are sustained.

■ We now come to a consideration of the pleas in bar tendered by the defendants Pike and Comen. It is conceded that Pike is the secretary of the defendant the Solvents Recovery Company, and Comen is the president of the defendant the Connecticut Alcohol Distributors, Inc., and that subpoenas duces tecum were issued to each of them as individuals, in which subpoenas their official capacity was described, directing them to appear and testify before the grand jury and produce corporate records. It also appears that they obeyed the command of the subpoenas, were sworn before the grand jury, and did testify and produce their records. The pleas in bar assert a claim of immunity in behalf of both of these defendants, which is predicated on the language of section 30, title 2, of the National Prohibition Act, which provides that:

"Sec. 30. No person shall be excused, on the ground that it may tend to incriminate him or subject him to a penalty or forfeiture, from attending and testifying, or producing books, papers, documents, and other

evidence in obedience to a subpœna of any court in any suit or proceeding based upon or growing out of any alleged violation of this Act; but no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing as to which, in obedience to a subpœna and under oath, he may so testify or produce evidence, but no person shall be exempt from prosecution and punishment for perjury committed in so testifying." 27 USCA § 47.

It is true, as the government asserts, that these men testified only as corporate officers and not as individuals. It is difficult to measure the quantum of significance in this assertion. If we assume they had committed perjury before the grand jury, would counsel for the government then contend that as officers of the corporation they should be sent to jail, while as individuals they should be permitted to go free? A person may indeed acknowledge the execution of a deed or sign a contract as a corporate officer; but I have yet to learn that he can take an oath and commit perjury in any other than an individual capacity. The rule which regards a corporation as a juristic person does not fuse the officer into the corporation. Nor is it legally permissible to extract incriminatory testimony from an individual upon the claim that his evidence is not being produced by himself, but by a cog of the corporate mechanism.

█ The government contends that the testimony given by these two defendants was perfunctory and unimportant, and in its brief quotes all the testimony given in each instance to show how unimportant it was. It may be noted in passing that the position of counsel is somewhat inconsistent, as in this instance they not only ask the court to inspect the testimony given before the grand jury, but quote it, while at another time objection is entered to the request of counsel for defendants that the court read the evidence adduced before the grand jury for the purpose of showing that the evidence upon which the indictment was procured was hearsay, incompetent, and insufficient. It would seem to be more logical to consider the question only on the basis of the fact that Pike and Comen testified before the grand jury and determine the matter upon that fact alone.

At this moment counsel for the government want to show by a full transcript of the testimony of Pike and Comen that it was unimportant. Earlier the defendants want to show by a full transcript of the testimony of other witnesses that the testimony against these defendants was unimportant, in the sense that it is incompetent, insufficient, and hearsay. I fail to see any difference. However, perhaps the testimony given by Pike and Comen was unimportant, as counsel for the government contends. Such a contention gives rise to some curious reflections. If it was so unimportant, why did the government risk the claim of immunity which it must have known would be urged in behalf of these two defendants. I have been referred to nothing in the statutes or elsewhere which suggests that the extent or the applicability of the immunity is in any wise dependent upon the importance, quantity, or materiality of the testimony procured from the witness.

█ Further contention is made by the government that the present prosecution is for a conspiracy to violate the National Prohibition Act, and is not brought under the act itself, and that it follows that there is no immunity afforded. I can see no force in this suggestion. True, it is the Prohibition Act which provides the immunity, and not the conspiracy statute. But the Volstead Act specifically provides that, "for or on account of any transaction, matter, or thing as to which, in obedience to a subpœna and under oath, he may so testify or produce evidence" may a witness claim immunity. 27 USCA § 47.

That language, without doubt, shields the witness from any criminal prosecution involving the same subject-matter, regardless of the specific statute upon which the indictment is predicated. In any event it should be observed that a conspiracy to divert denatured alcohol, which is the charge in the case at bar, would constitute no crime whatever, were it not for the provisions of the National Prohibition Act and the regulations made thereunder. In this sense every conspiracy to commit an offense against the United States is ultimately based on the statute creating the offense, and, unless the indictment clearly exhibits a purpose to contravene that statute, it states no crime at all.

█ Poor indeed, and derisively delusive, would be the protection afforded by section 30 of the National Prohibition Act, if its amnesty extended no further than to inhibit prosecutions formally based upon some section of the act. It is common knowledge that, except in cases of isolated offenses upon a minor scale, prosecutions for illicitly engaging in the liquor traffic are seldom brought under the act itself. The statutes most frequently invoked were in existence

long before the Eighteenth Amendment was adopted. Not only is the conspiracy statute relied upon, but the tariff, navigation, and internal revenue laws are combed to furnish predicates for prosecutions, fines, and forfeitures.

It happens, for instance, that transportation of liquor is an offense under the National Prohibition Act; but, if the transportation is effected by means of a ship within our territorial waters, such transportation would also constitute an offense more drastically punishable under the Tariff Act. Shall we say that the master of an offending vessel could be compelled perforce section 30 of the National Prohibition Act, to furnish the evidence for his own prosecution under the Tariff Act? If section 30 led to any such result, then it needs no subtlety to discover that section 30 is unconstitutional; for the protection against prosecution would then not be as broad as the protection against self incrimination; and unless it is at least as broad as that the statute is void. Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110; Brown v. Walker, 161 U. S. 591, 16 S. Ct. 644, 40 L. Ed. 819. In United States v. Moore (D. C.) 15 F.(2d) 593, Judge Bean, speaking with reference to the immunity clause, after pointing out that Congress, having in view the ruling of the Supreme Court in Brown v. Walker, embodied in the Volstead Act a provision almost identical in language with that before the Supreme Court, said on page 594 of 15 F.(2d):

"It is to enable the government by subpœna to compel a witness to testify in a case based upon or growing out of an alleged violation of the Volstead Act, whether he is willing to do so or not, and it guarantees him immunity from prosecution, not only for what he testifies to, but for any violation by him of the act, that the government may be able to ferret out by reason of the testimony that he gives."

It is perfectly clear that counsel for the government recognize the force of this view of the law, as applied to a private person as distinguished from a corporate officer, because, as has been earlier noted, there were 12 others in the alleged conspiracy who testified before the grand jury. They were not indicted, because, as the indictment asserts, "they testified before the grand jury concerning the matters therein charged." So, too, did Pike and Comen, even though it be conceded that their testimony was unimportant. No authority has been cited to show that it must appear to the satisfaction of the

district attorney or the court that a witness, in order to enjoy the privilege of immunity accorded by the statute, has given important testimony before the grand jury. And of course none such can be found. That they testified as corporate officers begs the question, and who can say but what their testimony enabled the government "to ferret out the facts" necessary to complete its case against these defendants. That being so, the court should not deny them the immunity guaranteed by the provisions of the act.

We come, then, to the last objection urged against the pleas in bar. These defendants, it is asserted by the government, waived their immunity by failing, before the grand jury, to claim their constitutional privilege and refuse to testify. I am unable to see just why a person should be expected to claim a privilege which the law bestows upon him. There is nothing in the language of section 30 which justifies this claim. Nor do I think that the law stakes the liberty of the citizen upon the due performance of some piece of ceremonial mummery. Just how should these two defendants have made their claim? By refusing to obey the mandate of the subpœna? Such refusal would subject them to fine and imprisonment. By refusing to testify once they were within the grand jury room. Such refusal might conceivably lead to an instruction from the court that they would be immune from prosecution. But that is what the statute had already provided, and so they would need no such assurance. On what ground then, could they refuse to testify? None is suggested. And, if the law says that they may not refuse, are we to understand that that same law required that they should refuse?

It is indeed true that upon this subject also there is a conflict of opinion. In the case of United States v. Skinner (D. C.) 218 F. 870, Judge Grubb of Georgia, sitting in the Southern district of New York, wrote an elaborate opinion in support of the thesis that, even under such a statute, the right to refuse to testify must be asserted before immunity follows. The argument would have been more convincing if the learned judge had pointed out upon what principle a nonexistent right can ever be asserted. But in United States v. Pardue (D. C.) 294 F. 543, Judge Hutcheson vigorously expressed his dissent from Judge Grubb's conclusion, and on page 546 said:

"Judge Grubb, in the Skinner Case, stands alone in the position which he there takes. While his opinion presents a splendid argument against the wisdom of the immu-

nity statutes as they now are, and a good suggestion to the legislative authorities for an amendment of them, it presents, in my opinion, no judicial ground for refusing to apply the statute as written. It by judicial interpretation writes into a statute in derogation of a constitutional right a limitation not therein contained, and which the ordinary mind, to which the statute is addressed, could not have supposed was contained in it. It to an extent follows the Draconian principle of writing the law in characters so fine that no one can read it, and thereby putting the government in a better position to take the unwary ones into its net. It magnifies the fault of the defendant, while it minimizes the bad faith of the government. It puts the seal of condemnation upon the offense against the general laws of which the defendant is charged, but it approves double dealing and evasion on the part of the government in the matter of a man's constitutional protection, which right reason and sound discrimination cannot, in my opinion, sustain."

Judge A. N. Hand, in the case of United States v. Lay Fish Co. (D. C.) 13 F.(2d) 136, expressed himself as in accord with Judge Grubb in the Skinner Case; but in United States v. Moore, supra, Judge Bean held that, under section 30, title 2, of the National Prohibition Act, immunity of witnesses testifying before the grand jury is not waived by their failure to claim the privilege and refusal to testify, and on page 594 of 15 F.(2d) said:

"There are, I know, some decisions of District Courts to the contrary; but, in view of the construction given the statute by the Supreme Court, it seems to me clear that the court is forced to the conclusion that the pleas in bar are good. It is said that defendants are not entitled to immunity, because they did not, when called as witnesses, claim their privilege and refuse to testify. That would have been a useless act on their part, because they were compelled to testify, whether they wanted to or not. Such was the ruling in the Brown Case. It cannot be said that they waived their privilege when they appeared in obedience to subpœna and testified for the government. They had no alternative but to comply with the subpœna. Having done so, the government is not in position now to charge Moore or Robinson with a conspiracy to violate the Prohibition Act."

Such was the conclusion of Judge Neterer in United States v. Ward (D. C.) 295 F. 576. Indeed the Moore Case is the only one which deals specifically with section 30, title 2, of the National Prohibition Act. A well-reasoned and persuasive opinion by the New York Court of Appeals in construing a similar statute will be found in People v. Sharp, 107 N. Y. 427, 14 N. E. 319, 1 Am. St. Rep. 851, and, indeed, in none of the cases above cited will there be found an attempt to meet the powerful presentation by Judge Danforth in the Sharp Case. Had there been any doubt in my own mind, I would have found it impossible to resist the logic of that opinion as found on page 443 et seq. of 107 N. Y. (14 N. E. 319).

The Circuit Court of Appeals for the Fourth Circuit in Johnson v. United States, 5 F.(2d) 471, held that one who fully answered questions of a government agent investigating liquor prosecutions and who voluntarily testified in the prosecution of another defendant in obedience to a subpœna, without knowledge or suspicion that he was in any wise criminally implicated, was not immune from a subsequent prosecution. But those are not the facts at all in the case at bar. In fact, they are quite opposed to the facts in the Johnson Case. In any event Judge Rose quotes with approval the language of Professor Wigmore on page 478, of 5 F.(2d), and it is to be noted that the learned author says:

"The anticipatory legislative pardon or immunity is not authorized absolutely but only conditionally upon and in exchange for the relinquishment of the privilege. The Legislature did not intend to give something for nothing, i. e., to give immunity merely in exchange for a testimonial disclosure which it could in any event have gotten by ordinary rules or by the witness' failure to insist on his privilege. The immunity was intended to be given solely as a means of overcoming the obstacle of the privilege; and therefore (irrespective of the precise formality of the judge's procedure) could not come into effect until that obstacle was explicitly presented and thus needed to be overcome."

The inquiry into legislative motives is often difficult and delicate, when the language of the statute is obscure. When the language is plain and unambiguous, courts hold no commission to alter it, to suit their conception of the motives which prompted the legislative will. If the plain wording of a statute does not really say what it was intended that it should say, then the place to reform the act is in the Congress, and not in the courts. But, were I minded, in this instance, to speculate on the legislative intent, I would say that Congress never intended to enact an equivocation; that it did not cunningly conceal within the body of the statute a proviso or limitation wholly undiscernible

to the layman, and visible, if at all; only to the sophisticated vision of a legal casuist. Congress did not intend to construct a trap for the unlearned or unwary; nor did it intend that the meaning of some barren formula should be the prerequisite of admission to grace in exchange for something done. If amnesty were to be available only to those who protested, it would have been a simple matter for the Congress to have added to section 30 the following language:

"But no person shall be entitled to the benefits hereof unless he shall, before testifying, declare to the court his refusal to testify on the ground of self crimination."

For the reasons given, I conclude that these two defendants did not have to note their refusal to testify before the testimony was given in response to the mandate of the subpœna, in order to avail themselves of the privilege accorded them by law.

The defendants' motions to quash are therefore denied, and the government's motions to strike them from the files are granted. The demurrers to the pleas in abatement to the extent herein indicated are overruled, and as to the balance they are sustained. The demurrer to the pleas in bar filed by Pike and Comen are overruled, and the pleas in bar sustained.

Let orders be entered in accordance with the views expressed and conclusions reached.