### WILSON v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit.   January 5, 1916.)

#### No. 213.

1. POISONS ⟨⟩4—CRIMINAL OFFENSES—STATUTORY PROVISIONS—"ANY PERSON."

Harrison Law (Act Dec. 17, 1914, c. 1) § 1, 38 Stat. 785, provides that every person, who produces, deals in, etc., opium or coca leaves, shall register with the collector of internal revenue and pay a special tax, but that this shall not ·apply to certain classes of persons therein specified. It also provides that it shall be unlawful for any person required to register thereunder to produce, deal in, etc., any of such drugs without having registered and paid such special tax.  Section 8 provides that it shall be unlawful for any person not registered thereunder, and who has not paid the special tax, to have any of such drugs in his possession or under his ʾcontrol, and that such possession or control shall be presumptive evidence of a violation of that section and of a violation of section 1, provided that such section shall not apply to any employé of a registered person, or to a nurse under the supervision of a registered physician, dentist, or veterinary surgeon, or to the possession of any such drugs prescribed in good faith by a registered physician, etc., or to any United States, state, county, etc., officer or official having possession thereof by reason of his official duties, or to a warehouseman holding possession for a person registered or to common carriers tránsporting such drugs. *Held,* that the words "any person," as used in section 8, are not limited to persons required by section 1 to register and pay such tax, but are sufficiently broad to cover, and do cover, all other persons not excepted by the proviso of section 8.

[Ed. Note.—For other cases, see Poisons, Cent. Dig. § 2;  Dec. Dig. ⟨⟩4.

For other definitions, see Words and Phrases, First and Second Series, Any.]

2. GRAND JURY ⟨⟩38—PRESENCE OF STENOGRAPHER IN GRAND JURY ROOM.

The presence in the grand jury room of a stenographer, who merely recorded the testimony as it was given and did not attend at the deliberations of the grand jury, did not invalidate an indictment, especially where such stenographer was a regular clerk and assistant to the district attorney, appointed by the Attorney General to an office with prescribed duties and fixed tenure, and who had taken the oath required from all government officials.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 81;  Dec. Dig. ⟨⟩38.]

---

⟨⟩For other cases see same topic &·KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. GRAND JURY ☞38—PRESENCE OF STENOGRAPHER IN GRAND JURY ROOM.**

Act June 30, 1906, c. 3935, 34 Stat. 816 (Comp. St. 1913, § 534), providing that the Attorney General or any officer of the Department of Justice or any attorney or counselor specially appointed by the Attorney General under any provision of law may, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceedings, including grand jury proceedings, which district attorneys are authorized to conduct, is not an exclusive enumeration of all persons who may be present at any time in a grand jury room when testimony is being taken, and does not prohibit the presence of a stenographer, as that act is not concerned with that subject at all, but deals only with the conduct of legal proceedings.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. § 81; Dec. Dig. ☞38.]

In Error to the District Court of the United States for the Southern District of New York.

Tom Wilson was convicted of a violation of section 8 of the act of December 17, 1914, familiarly known as the "Harrison Law," and the cause comes here upon writ of error to review the judgment. Affirmed.

L. Jersawitz, of New York City, for plaintiff in error.

H. Snowden Marshall, U. S. Atty., of New York City (H. A. Content, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. There is no dispute about the facts. There was found in defendant's possession a substantial quantity of opium. He admitted that he kept it solely for the purpose of smoking it; that whenever he desired to smoke he would take some of the opium found in his possession, "cook it," and smoke it. He did not produce opium, nor import, nor manufacture, nor compound, nor deal in it. Nor did he dispense it, nor sell, distribute, or give it away. He was employed as a jewelry salesman; no physician had ever prescribed opium for him; he was not a nurse, nor a federal, state, or municipal official such as the statute enumerates, nor was he the employé of a person registered under the statute, nor was he a warehouseman or common carrier.

[1] Section 1 of the act provides as follows:

"That on and after the first day of March, nineteen hundred and fifteen, every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away opium or coca leaves or any compound, manufacture, salt, derivative, or preparation thereof, shall register with the collector of internal revenue of the district his name or style, place of business, and place or places where such business is to be carried on: Provided, that the office, or if none, then the residence of any person shall be considered for the purposes of this act to be his place of business. At the time of such registry and on or before the first day of July, annually, thereafter, every person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away any of the aforesaid drugs shall pay to the said collector a special tax at the rate of $1 per annum: Provided, that no employé of any person who produces, imports, manufactures, compounds, deals in, dispenses, sells, distributes, or gives away any of the afore-

said drugs, acting within the scope of his employment, shall be required to register or to pay the special tax provided by this section: Provided further, that the person who employs him shall have registered and paid the special tax as required by this section: Provided further, that officers of the United States government who are lawfully engaged in making purchases of the above-named drugs for the various departments of the Army and Navy, the Public Health Service, and for government hospitals and prisons, and officers of any state government, or of any county or municipality therein, who are lawfully engaged in making purchases of the above-named drugs for state, county, or municipal hospitals or prisons, and officials of any territory or insular possession or the District of Columbia or of the United States who are lawfully engaged in making purchases of the above-named drugs for hospitals or prisons therein shall not be required to register and pay the special tax as herein required.

"It shall be unlawful for any person required to register under the terms of this act to produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away any of the aforesaid drugs without having registered and paid the special tax provided for in this section.

"That the word 'person' as used in this act shall be construed to mean and include a partnership, association, company, or corporation, as well as a natural person; and all provisions of existing law relating to special taxes, so far as applicable, including the provisions of section thirty-two hundred and forty of the Revised Statutes of the United States are hereby extended to the special tax herein imposed."

### Section 8 provides as follows:

"That it shall be unlawful for any person not registered under the provisions of this act, and who has not paid the special tax provided for by this act, to have in his possession or under his control any of the aforesaid drugs; and such possession or control shall be presumptive evidence of a violation of this section, and also of a violation of the provisions of section one of this act: Provided, that this section shall not apply to any employé of a registered person, or to a nurse under the supervision of a physician, dentist, or veterinary surgeon registered under this act, having such possession or control by virtue of his employment or occupation and not on his own account; or to the possession of any of the aforesaid drugs which has or have been prescribed in good faith by a physician, dentist, or veterinary surgeon registered under this act; or to any United States, state, county, municipal, district, territorial, or insular officer or official who has possession of any said drugs, by reason of his official duties, or to a warehouseman holding possession for a person registered and who has paid the taxes under this act; or to common carriers engaged in transporting such drugs: Provided further, that it shall not be necessary to negative any of the aforesaid exemptions in any complaint, information, indictment, or other writ or proceeding laid or brought under this act; and the burden of proof of any such exemption shall be upon the defendant."

The contention of defendant is that he is not covered by the provisions of section 8 because the words "any person" as used therein are to be construed as referring only to persons of the classes referred to in section 1 as being obliged to register and to pay a tax. We do not find this contention persuasive; the words "any person" are comprehensive; they are broad enough to cover not only the "producers, dealers, distributors, givers away," etc., who by section 1 are allowed to register, but also all other persons. That Congress used the words with this comprehensive meaning seems to us manifest from the exceptions which it includes in the proviso that immediately follows. A nurse may have some opium in her possession, and yet not be herself "a dealer, distributor," etc., nor entitled to take out a license. So too

a person subject to sharp spasms of pain may have some in his possession, and yet not be himself "a dealer, distributor," etc., nor entitled to take out a license. Both these persons would be covered by the first clause of section 8 and their possession would be unlawful. *Therefore* Congress saved them in the proviso, by relieving from the application of the first clause—the nurse, if her possession was by virtue of her employment, and the invalid, if the drug had been prescribed for him by a physician. Grammatically there is nothing in the section which would so restrict the comprehensive meaning of the words "any· person," as to make them include only those who might take out license but have neglected to do so.

There is nothing to indicate that Congress intended its proscription to be less comprehensive than the language it used requires. It has legislated quite drastically about opium in Act Feb. 9, 1909, 35 Stat. at Large, 614, c. 100 (Comp. St. 1913, § 8800), prohibiting its importation for any but medicinal purposes and making any one who imports for other purposes or who uses the drug, knowing that it has been so fraudulently imported, subject to prosecution. The eighth section of the act of 1914 is legislation of the same sort; it prohibits any one, other than those who register and pay tax, and a few other persons, nurses, invalids, common carriers, etc., from having any opium in their possession and imposes a penalty for their doing so.

[2] Error is further assigned to a refusal of the trial judge to quash or abate the indictment "because of the presence in the grand jury of an unauthorized person during the taking of the testimony relating to the indictment."

This person was one of the official staff of the district attorney; he was present only while testimony was being taken and all that he did was to take down in shorthand the testimony of the witnesses. The question presented is: Does the sanction of secrecy which the common law has always given to proceedings before grand juries preclude the use of a fit and properly appointed stenographer from recording the testimony adduced before them? Apparently there have been different answers to this question in different districts; but in this circuit for upwards of 60 years it has been uniformly held that the presence of a proper shorthand reporter, who merely recorded the testimony as it was given and did not attend at the deliberations of the grand jury did not invalidate an indictment. See United States v. Reed, 27 Fed. Cas. 727, decided in 1852 by Judge Nelson, who said:

"That has been the practice, to my knowledge, without question, ever since I have had any connection with the administration of criminal justice."

See, also, United States v. Simmons (C. C.) 46 Fed. 65; United States v. Rockefeller (D. C.) 221 Fed. 462; United States v. Heintse (C. C.) 177 Fed. 772.

These decisions refer to the shorthand writer · who discharges the important function of preserving an accurate record of the testimony taken; they do not at all indicate that other individuals, whose presence may be more or less convenient or useful, such as expert bookkeepers or accountants, may attend, except as witnesses.

The Circuit Court of Appeals in the Fifth Circuit (Latham v. United

States, 226 Fed. 420, —— C. C. A. ——), has reached a different conclusion and in its full and careful opinion will be found a strong presentation of the reasons for maintaining a strict observance of a rule which originated before there were shorthand writers. Nevertheless, we are not persuaded to abandon the well-settled and long-continued practice in our own circuit. To do so would seem like a reverter to strict technicalities, overattention to which sometimes tends to defeat rather than to advance the ends of justice. There seems no reason why criminal law and procedure should not, like other law and procedure, progress with the progress of the age. Presumably no court to-day would set aside a righteous verdict for the reasons which appeared convincing to Mr. Justice Taney in United States v. Dow, 25 Fed. Cas. 901.

We are satisfied that the preservation of an accurate record of the testimony submitted to a grand jury tends to advance the ends of justice. The knowledge that there is being taken a record of such sort that, in any future prosecution for perjury, it will probably be taken by a trial jury as a correct one is a wholesome check on the witnesses who are testifying before a grand jury. There are very many causes which come before a grand jury which involve complicated questions and call for voluminous testimony from many witnesses. It cannot all be put in at once; not infrequently the statement of one witness will indicate where another witness may be found and days or weeks may elapse before he can be produced. The recollection of the 16 jurors may not always be harmonious as to what some prior witness testified to; it is important and advances the ends of justice always to have before the grand jurors themselves when they deliberate on their future action an accurate record of all the testimony which a stenographic report alone can give; it is as important for the person charged as it is for the government; it may save him from indictment through misrecollection.

Moreover, this stenographer was no chance man called in by a district attorney for this case and merely sworn to take and transcribe his notes of that investigation accurately. He was a regular clerk and assistant to the district attorney, appointed by the Attorney General of the United States to an office with prescribed duties and fixed tenure. And he took the oath required from all government officials to bear allegiance and "well and faithfully to discharge the duties" of his office during the term of his incumbency.

[3] Plaintiff in error cites the act of Congress of 1906 (34 Stat. at Large, p. 816), which provides that:

"The Attorney General or any officer of the Department of Justice, or any attorney or counselor specially appointed by the Attorney General under any provision of law, may, when thereunto specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which district attorneys now are or hereafter may be by law authorized to conduct, whether or not he or they be residents of the district in which such proceeding is brought."

It is contended that this is an exclusive enumeration of all persons who may be present at any time in the grand jury room when testi-

mony is being taken. We do not so construe the act; it is not at all concerned with that subject, dealing only with the *"conduct* of legal proceeding" and increasing the power of the Attorney General at the expense of the exclusive powers of the district attorneys.

The judgment is affirmed.