**In re Grand Jury Proceedings, UNITED STATES of America, Movant,**

**v.**

**Dominick DI GIRLOMO, Respondent.**

**No. 74 CV–456–W–4.**

United States District Court,
W. D. Missouri, W. D.
March 26, 1975.
As Amended April 1, 1975.

Michael DeFeo, Sp. Atty., Dept. of Justice, Bert C. Hurn, U. S. Dist. Atty., Kansas City, Mo., for movant.

Lawrence H. Pelofsky, Kansas City, Mo., for respondent.

## MEMORANDUM AND ORDER SUSTAINING MOTION FOR CONFINEMENT PURSUANT TO 28 U.S.C. SECTION 1826(a)

ELMO B. HUNTER, District Judge.

This is an action for civil contempt brought pursuant to Section 1826(a) of Title 28, United States Code, wherein the United States has moved that Dominick Di Girlomo be confined for his refusal without just cause to comply with an order of court to testify before a federal grand jury for this district. Respondent has asserted as a defense to movant's motion that he has "just cause" for his refusal to testify. As his defense of "just cause," respondent asserts that persons other than persons authorized by Rule 6(d) of the Federal Rules of Criminal Procedure were present in the grand jury room during the session of the grand jury wherein he was ordered to testify.[1]

The sole question presented for the Court's determination in this cause is whether Special Attorneys William E. Zleit, Gary Cornwell, William Tetrick, and Philip Adams, who are assigned to and members of the Kansas City Field Office of the Organized Crime and Racketeering Section, Criminal Division, Department of Justice, are authorized "attorneys for the government," within the meaning of Rule 6(d) of the Federal Rules of Criminal Procedure, entitled to be present while the grand jury is in session.

The facts in this cause have been fully stipulated by the parties. The Court adopts the stipulation of the parties, attached hereto as Appendix A, as its findings of fact.

The question of the authority of attorneys who are members of various Field Offices of the Organized Crime and Racketeering Section, Criminal Division, Department of Justice as it relates to the propriety of their presence while a federal grand jury is in session has recently been raised in a large number of criminal cases in this district and in other districts. See, e. g., United States v. Williams, 65 F.R.D. 422 (W.D. Mo.); United States v. Wrigley, No. 74 CR–448–W–1, 392 F.Supp. 14 (W.D. Mo.); United States v. Agrusa, 392 F. Supp. 3 (W.D.Mo.); Sandello v. Curran, M 11–188 (S.D.N.Y. Feb. 27, 1975); United States v. Brown, No. 74 CR–867, 389 F.Supp. 959 (S.D.N.Y.1975); United States v. Crispino, No. 74 CR–932, 392 F.Supp. 764 (S.D.N.Y.1975); In re Persico, 75 CV–96 (E.D.N.Y. Feb. 5, 1975); United States v. Jacobson, No. 74 CR–936 (S.D.N.Y. March 3, 1975); United States v. Ferri, No. 74–277–Criminal (W.D.Pa. Feb. 18, 1975).

Because of the seriousness of the question, and the consequences of a determination adverse to the United States, its presence, unresolved, has caused a substantial impairment to the disposition of a large number of criminal matters wherein attorneys from the Organized Crime and Racketeering Section purport to represent the United States in this Division of the Western District of Missouri, and it is the understanding of the undersigned judge that similar impairments have arisen in a large number of criminal matters in the other divisions of the Court. It is highly in the public interest and necessary to the proper administration of justice that the issue presented herein be resolved at the appropriate appellate level to give direction to the district courts in cases presently pending and in future proceedings. For this reason, a speedy resolution of the question at the appellate level is imperative. It is to this end that the parties to this action and the undersigned judge have attempted to expedite this

---

1. While appearing before the grand jury, respondent asserted numerous grounds as "just cause" for his refusal to testify. These grounds have now been narrowed so that the only ground now asserted is that concerning the presence of unauthorized persons in violation of Rule 6(d), F.R.Crim.P.

matter to a final determination in the district court.

■ The principle which underlies the limitation of Rule 6(d) on persons who may be present while the grand jury is in session is the same as that which underlies the limitation of disclosure of matters occurring before the grand jury provided in Rule 6(e); that is the long established policy to maintain the secrecy of the grand jury proceedings in the federal courts. The reasons for the policy of secrecy first set out in United States v. Amazon Industrial Chemical Corp., 55 F.2d 254, 261 (D.C.Md.1931), have been quoted by the Supreme Court with approval in United States v. Proctor & Gamble Co., 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958), as follows:

"In United States v. Rose (CA3 Pa.) 215 F.2d 617, 628–629, those reasons were summarized as follows: '(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subordination of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrampled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.' "

The Supreme Court specifically stated in United States v. Proctor & Gamble Co., *supra,* 356 U.S. 681–682, 78 S.Ct. 986 that one reason for the long established policy that maintains the secrecy of the grand jury proceedings in the federal courts "is to encourage all witnesses to step forward and testify freely without fear of retaliation." See In re William

H. Pflaumer & Sons, Inc., 53 F.R.D. 464 (D.C.Pa.1971); Posey v. United States, 416 F.2d 545 (5th Cir. 1969).

■ Because one of the reasons which underlie the policy of secrecy is to encourage free and untrampled disclosures by witnesses without fear of retaliation, it follows that a witness may object to the presence of unauthorized persons during his testimony before the grand jury. The Court therefore is of the opinion that the presence of unauthorized persons during the session in which a witness is called to testify would, if established, constitute "just cause" for a refusal to testify and a defense to this civil contempt action brought pursuant to Section 1826(a) of Title 28, United States Code.

Rule 6(d) of the Federal Rules of Criminal Procedure provides as follows:

"Who May Be Present. Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer or operator of a recording device may be present while the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting."

Those persons encompassed by the term "attorneys for the government" within the context of Rule 6 of the Federal Rules of Criminal Procedure are set forth in Rule 54(c) of those Rules as follows:

" 'Attorney for the government' means the Attorney General, an authorized assistant of the Attorney General, a United States Attorney, an authorized assistant of a United States Attorney and when applicable to cases arising under the laws of Guam means the Attorney General of Guam or such other person or persons as may be authorized by the laws of Guam to act therein."

■ Although the provisions of Rule 54(c), F.R.Crim.P. appear at first glance to specifically define and limit

those persons authorized to be present while the grand jury is in session as "attorney for the government", the Rule must be read in connection with the various statutes pertaining to the Department of Justice, the Solicitor General, Assistants to the Attorney General, Assistant Attorneys General, Conduct of Legal Proceedings on behalf of the United States, Counsel to aid United States Attorneys, United States Attorneys, Assistant United States Attorneys, and the duties of the officers of the Department of Justice. See Original Advisory Committee Notes to Rule 54(c), F.R.Crim.P., 8A Moore, Federal Practice, ¶ 54.01(2), 54–13 to 54–14 (1974 ed.).[2]

Movant asserts as authority for the presence during the grand jury session of the attorneys for the Kansas City Field Office of the Organized Crime and Racketeering Section, Section 515(a) of Title 28, United States Code. That statute formerly codified in substantially the same form as 5 U.S.C. § 310, provides as follows:

> "The Attorney General or any other officer of the Department of Justice, or any attorney specifically appointed by the Attorney General under law, may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct,

whether or not he is a resident of the district in which the proceeding is brought."

If attorneys William E. Zleit, Gary Cornwell, William Tetrick, and Philip Adams have been specifically appointed in accordance with the provisions of Section 515(a) they are authorized under Rules 6(d) and 54(c) to be present while the grand jury is in session. It is the validity of their appointments which constitutes the key issue in this case.

The authorization of attorneys of the Kansas City Field Office pertinent herein is in the form of a letter to each of the attorneys whose authorization has been challenged.

The authorizations of Messrs. Zleit, Cornwell, Tetrick, and Adams, are contained in identically worded letters of appointment under date of January 2, 1973; August 2, 1974; August 9, 1974; and June 25, 1973 respectively. Those letters provide in pertinent part as follows:

> "The Department is informed that there have occurred and are occurring in the Western District of Missouri and other judicial districts of the United States violations of federal criminal statutes by persons whose identities are unknown to the Department at this time.

> "As an attorney at law you are specifically retained and appointed as a Special Attorney under the authority

---

2. The Advisory Committee Notes to Original Rule 6(d) provide that "This Rule generally continues the existing law. See 18 U.S.C. § 556 (Indictments and presentments; defects of form) (as amended now 18 U.S.C. §§ 3288–3289) and 5 U.S.C. § 310 (Conduct of Legal Proceedings) (as amended now 28 U.S.S. § 515(a))."

In view of the fact that the Original Advisory Committee Notes to Rules 6(d) and 54(c), F.R.Crim.P. make specific reference to statutes then existing and presently existing in amended form, and in view of the fact that Section 515(a) of Title 28 (formerly Section 310 of Title 5) was reenacted in its present form in 1966, the Court does not deem those statutes which empowered and presently empowered persons other than the

"Attorney General" an "authorized Assistant of the Attorney General" a "United States Attorney" and an "authorized assistant of a United States Attorney" as those persons are defined by statute, to be present while the grand jury is in session repealed by reason of "conflict" with Rule 54(c). See 18 U.S.C. § 3771; see, e. g., Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L. Ed.2d 216 (1973). However, a clarification of the provisions of Rule 54(c) concerning "attorney for government" would appear to be in order to relieve any doubt concerning those persons actually deemed "attorney for the government" within the context of Rule 6(d) and (e). See 8 Moore, Federal Practice, ¶¶ 6.05, 6–55 to 6–57 (1974 ed.).

of the Department of Justice to assist in the trial of the aforesaid cases in the aforesaid district and other judicial districts of the United States in which the Government is interested. In that connection you are specifically authorized and directed to file informations and to conduct in the aforesaid district and other judicial districts of the United States any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States Attorneys are authorized to conduct.

"Your appointment is extended to include, in addition to the aforesaid cases, the prosecution of any other such special cases arising in the aforesaid district and other judicial districts of the United States.

"You are to serve without compensation other than the compensation you are now receiving under existing appointment." [3]

The letters of appointment to Messrs. Zleit, Tetrick and Adams are purportedly signed by Henry E. Peterson, Assistant Attorney General. The most recent letter to Mr. Cornwell is purportedly signed by John C. Keeney, Acting Assistant Attorney General.

Following receipt of their letter of appointment, Messrs. Zleit, Cornwell, Tetrick, and Adams, executed and filed with the Clerk of the Court an oath of office of Special Attorney pursuant to their letter of authorization.

In the stipulation filed in this cause, respondent has challenged the due execution of the mentioned letters of appointment by the purported signators—Henry E. Peterson, Assistant Attorney General, and John C. Keeney, Acting Assistant Attorney General. Further, respondent has challenged the authority of the persons who purportedly signed the letters of appointment to make such an appoint-

ment on the grounds that the power of the Attorney General to appoint Special Attorneys under Section 515(a) is not a delegable power, and in any event has not been properly delegated.

The Court is in agreement with the portions of the decisions in United States v. Crispino, 73 Cr. 932, 392 F.Supp. 764 (S.D.N.Y. 1975); United States v. Brown, 74 Cr. 867, 389 F.Supp. 959 (S.D.N.Y.1975), and Sandello v. Curran, No. M 11–188 (S.D.N.Y. February 27, 1975) holding that the power to appoint special attorneys under Section 515(a) may be delegated by the Attorney General to another "officer" of the Department of Justice. 28 U.S.C. § 510. And, the Court is of the opinion that delegation of power from the Attorney General to the Assistant Attorney General Criminal Division and in the case of the appointment of Mr. Cornwell to the Deputy Attorney General and Acting Assistant Attorney General was in all respects proper. 28 C.F.R. §§ 0.55, 0.60. May v. United States, 236 F. 495 (8th Cir. 1916); Sandello v. Curran, *supra*; United States v. Brown, *supra*; see United States v. Crispino, *supra*.

Regarding the question of whether the letters of appointment were in fact executed by the purported signators, Henry E. Peterson (Assistant Attorney General), John C. Keeney (Acting Assistant Attorney General), and Richard G. Kleindienst (Deputy Attorney General), the parties hereto have stipulated that the letters be received into evidence in this cause with respondent's denial of their due execution by the purported signator. The evidence herein establishes that at the time the letters of appointment were executed the persons whose purported signatures appear thereon held the position as an officer in the Department of Justice indicated in the signature block of the let-

---

3. Mr. Cornwell by letter under date of December 14, 1970, purportedly signed by Richard G. Kleindienst, Deputy Attorney General, was similarly appointed to conduct legal

proceedings with somewhat more specificity as to the violations of federal criminal statutes which the Department was informed to have been violated.

ter. There is no evidence whatsoever to indicate that the signatures appearing on the letters of appointment are not those of the persons indicated. The letters of appointment here in question and the accompanying executed oaths of office were filed with the United States District Court for the Western District of Missouri on the filing dates which appear thereon (Mr. Zleit on January 10, 1973; Mr. Cornwell on August 13, 1974 and December 23, 1970; Mr. Tetrick on August 27, 1974; Mr. Adams on August 3, 1973). The authenticity of the copies introduced in evidence herein have been attested by the Clerk of the United States District Court for the Western District of Missouri. A presumption of regularity attaches to these letters, and they are authorized to be filed in the Clerk's office for this District, May v. United States, *supra*. Furthermore, in regard to the authenticity of the signature of Henry E. Peterson, the Court received into evidence a letter bearing his signature in these proceedings on August 16, 1974. Comparison of the signatures on the letters of appointment in question with that on the letter from Mr. Peterson previously received into evidence indicates that the letters of appointment bearing the signature of Mr. Peterson were in fact executed by him. See Rule 901, Federal Rules of Evidence. Under the circumstances, the Court deems the letters of appointment of Messrs. Zleit, Cornwell, Tetrick, and Adams to be authentic and in fact executed by the persons indicated thereon.

 ▇▇▇ The remaining question in this cause is whether the letters of appointment to attorneys Zleit, Cornwell, Tetrick and Adams were executed in compliance with Section 515(a) so as to authorize them to conduct legal proceedings, including grand jury proceedings in this District. Although, as previously stated, this precise question involving similar letters of appointment has been and is presently being raised throughout the nation, the interpretation of Section 515(a) and its prior codification, 5 U.S.C. Section 310, is not a novel area of the law. See e. g. May v. United States, 236 F. 495 (8th Cir. 1916); Lathan v. United States, 226 F. 420 (5th Cir. 1915); Hale v. United States, 25 F.2d 430 (8th Cir. 1928); United States v. Huston, 28 F.2d 451 (N.D.Ohio 1928); United States v. Goldman, 28 F.2d 424 (D.Conn.1928); United States v. Morse, 292 F. 273 (S.D. N.Y.1922); Shushan v. United States, 117 F.2d 110 (5th Cir. 1941); cert. den. 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 reh. denied, 314 U.S. 706, 62 S.Ct. 53, 86 L.Ed. 564; United States v. Hall, 145 F.2d 781 (9th Cir. 1944); United States v. Powell, 81 F.Supp. 288 (E.D. Mo.1948); United States v. Morton Salt, 216 F.Supp. 250 (D.Minn.1962) aff'd, 382 U.S. 44, 86 S.Ct. 181, 15 L. Ed.2d 36 (1965). In Hale v. United States, 10 Cir., 25 F.2d 430 (1928) the Eighth Circuit Court of Appeals held that a "Special Assistant to the Attorney General" authorized under Section 310 of Title 5, the previous codification of § 515(a) was properly present during grand jury proceedings as a stenographer. The letter of appointment of the special attorney in *Hale* is recited in that decision to have provided as follows:

 " . . . (T)he Attorney General, by written order, had appointed him a special assistant to the Attorney General of the United States to assist in the trial of cases in which the government was interested and specifically 'to conduct, in the Western District of Oklahoma, and in any other judicial district or districts where the jurisdiction thereof lies, any kind of legal proceedings, civil or criminal, including grand jury proceedings and proceedings before a committing magistrate, which district attorneys are authorized by law to conduct.' "

Without discussion of the absence of "specificity" in the attorney's appointment, the Court of Appeals stated:

 "A district attorney or Assistant Attorney General may be present

throughout an inquest without personal participation, but no one on that ground could challenge their right to be present, provided they do not participate in the deliberations of that body. * * * Wilson v. United States (C.C.A.2) 229 F. 344; Wilkes v. United States (C.C.A.6) 291 F. 988, 992; May v. United States (C.C.A.8) 236 F. 495."

Most decisions which have examined various letters of appointment to determine their compliance with the provisions of Section 515(a) or Section 310, have examined the letters to determine if the special attorneys were acting within their specific direction by the Attorney General so as to authorize them to conduct particular legal proceedings on behalf of the United States. The issue raised in the instant cause is that the letters of appointment are too broad and thus the attorneys are not "specifically directed" in the context of Section 515(a). See e. g., United States v. Crispino, *supra*; United States v. Amazon Industrial Chemical Corp., 55 F.2d 254 (D.C.Md.1931); United States v. Hall, 145 F.2d 781 (9th Cir. 1944); United States v. Morse, 292 F.2d 273 (S.D. N.Y.1922); United States v. Goldman, 28 F.2d 451 (N.D. Ohio 1928). The decisions indicating preference for specific direction in reference to the activities to be performed or the place of performance have involved "officers of the Department of Justice" and "attorneys specially appointed". See e. g. United States v. Hall, *supra*; United States v. Morton Salt Company, *supra*; United States v. Crispino, *supra*.[4]

The statute which is presently codified as Section 515(a) of Title 28, was enacted by Congress in substantially the same form as the Act of June 30, 1906,

34 Stat. 816 to counteract the decision in United States v. Rosenthal, 121 F. 862 (C.C.S.D.N.Y.1903) which held that a "special assistant to the Attorney General" was not authorized by statute to "conduct proceedings before the grand jury," and stated that the Attorney General himself was excluded from proceedings before grand juries. United States v. Rosenthal, *supra* at 867. See Confiscation Cases, 74 U.S. (7 Wall.) 454, 457–58, 19 L.Ed. 196 (1868). Those decisions which have expressed the view that an appointment of a special attorney under later codifications of the Act of June 30, 1906 must contain a degree of specific direction concerning the activities of the attorney have in part gleaned the requirement from the legislative background of the statute. See, e. g., United States v. Williams, *supra*; United States v. Wrigley, *supra*; United States v. Crispino, *supra*; United States v. Houston, *supra*; United States v. Goldman, *supra*. Other recent decisions have reached the conclusion that the legislative history fails to establish the intent of Congress to impose a requirement of specificity. Sandello v. Curran, *supra*; United States v. Brown, *supra*; United States v. Weiner, 392 F. Supp. 81 (N.D.Ill., 1975).

As an additional basis for the requirement of specificity, the view has been expressed that without such a requirement the Attorney General could appoint attorneys under Section 515(a) with a "roving commission" without any limitations and thus allow them to supersede the local United States Attorneys and their regular assistants. See United States v. Goldman, *supra* 28 F.2d at 430; United States v. Crispino, *supra* at 392 F.Supp. 779; see also United States v. Wrigley, No. 74 Cr–488 W–1, 392 F. Supp. 14 (W.D.Mo., 1975).

---

4. Prior to April 17, 1930, attorneys appointed under the provisions of the statute now codified as 28 U.S.C. § 515 were known as "special assistants to the Attorney General". On April 17, 1930, Congress amended then Section 315 of Title 5 to provide that these attorneys may also be appointed as "special attorneys". The amendment did not provide authority for new appointments but merely permitted appointments as "special attorney" where the Attorney General felt that it was undesirable to use the term "special assistant to the Attorney General." H.R.Rep. No. 229, 71st Cong., 2nd Sess. (1930).

The Court has thoroughly reviewed the legislative history pertaining to the Act of June 30, 1906. Clearly, at that time, Congress was cautious in granting the Attorney General power to appoint special attorneys who were empowered to conduct legal proceedings which "district attorneys" were authorized to conduct. And, concern was expressed over the provisions which permitted these attorneys to appear before the grand jury. See H.R.Rep. No. 2901, 59th Cong., 1st Sess. (1906).[5] However, the Court respectfully disagrees with the view that the requirement of specificity as contained in United States v. Crispino, *supra*, will in some manner prevent the Attorney General from superseding the historic function of the United States Attorney and his appointed assistants or is necessary to achieve that purpose. Congress has since 1906 vested the Attorney General of the United States with enormous power, and has imposed on the person holding that office the duties and public trust that accompany that power. See, e. g. 28 U.S.C. §§ 509, 519, 526, 542, 547. Congress has clearly vested the Attorney General with the raw power to supersede the functions of the local United States Attorneys, and subjected them to his supervision. Although it may be said that Congress in 1906 was concerned with the usurpation of the functions of the local District Attorneys by the Attorney General and his assistants, this concern appears to have dissipated when in 1948 Congress expressly vested the Attorney General with complete control over all criminal prosecutions. Act of June 25, 1948, c. 646, § 1, 62 Stat. 910, formerly 28 U.S.C. § 507(b).

In the last 70 years, Congress has reacted to the increase in criminal activity by enacting an untold number of criminal statutes and by several reorganizations of the Department of Justice. See, e. g. Act of June 25, 1948, c. 646, 62 Stat. 910; Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 614. One of the results of these reorganizations has been a system whereby complex internal procedures of the Department of Justice provide direction and supervision to United States Attorneys, their assistants, and attorneys appointed pursuant to Sections 515 and 543 of Title 28. Although a need for written specificity of functions may have existed in 1906 to provide direction and supervision to attorneys appointed under the act of June 30, 1906, and as a device to give notice of the attorney's function to persons concerned, including then District Attorneys, that method of providing direction, supervision, and notice, has been long replaced by the internal workings of the Department of Justice.[6] Congress has long since abandoned the view that local United States Attorneys and their assistants maintain a strong independence from the Department of Justice or the Attorney General, and has chosen instead to combat criminal activities through a strong, centrally organized Department of Justice. See 28 U.S.C. §§ 501–550. The internal

5. An excellent and detailed recitation of the legislative history surrounding the Act of June 30, 1906, and related statutes is found in United States v. Crispino, *supra.*

6. In the context of attorneys assigned to the Kansas City Field Office of the Organized Crime and Racketeering Section, Criminal Division, Department of Justice, they are subject to supervision by their immediate superior and by a hierarchy which runs to the Assistant Attorney General, Criminal Division. And, as pointed out in regard to attorneys holding similar positions in the Northern District of Illinois in United States v. Weiner, *supra*, the special attorneys in this district are prevented from superseding the function of the local United States Attorneys by the internal procedures of the Department of Justice. For example, all motions and pleadings filed in these proceedings, like other proceedings wherein the United States has been represented by attorneys from the Kansas City Field Office, bear the signature of the United States Attorney for this District or one of his authorized assistants; and all indictments returnd by grand juries wherein the proceedings are conducted by attorneys for the Kansas City Field Office are signed by the United States Attorney or one of his authorized assistants.

workings of the Department of Justice, do now, and have for some time, provided direction and supervision to attorneys appointed under the provisions of Section 515. To require the specificity suggested by respondent and in United States v. Crispino, *supra*, would, in the opinion of the Court, do nothing to enhance this direction and supervision, and would merely impose a requirement on the Department of Justice to further hinder the enforcement of the criminal laws of the United States. See United States v. Weiner, *supra*. As stated in Wilson v. United States, 229 F. 344, 348 (2nd Cir. 1916) concerning the presence of a stenographer in the grand jury room as a basis for the quashing of an indictment.

"To do so would seem like a reverter to strict technicalities, overattention to which sometimes tends to defeat rather than to advance the ends of justice. There seems no reason why criminal law and procedure should not, like other law and procedure, progress with the progress of the age. Presumably, no court to-day would set aside a righteous verdict for the reasons which appeared convincing to Mr. Justice Taney in United States v. Dow, Md., 25 Fed.Cas. 901."

It is the opinion of this Court that Congress has by vesting the Attorney General with the power and responsibility over the enforcement of the criminal laws of the United States, evidenced an intent to empower him to make the broad Section 515 appointments of the type here challenged. See United States v. Weiner, *supra*; United States v. Brown, *supra*, Sandello v. Curran, *supra*. For that reason, and for the additional reasons stated herein, the Court finds the appointment of Messrs. Zleit, Cornwell, Adams, and Tetrick under the provisions of Section 515(a) of Title 28, United States Code, to be in all respects proper, and therefore their presence during the grand jury session authorized by the provisions of Rule 6(d), Federal Rules of Civil Procedure.

It is undisputed that on August 16, 1974, respondent Dominick Di Girlomo did fail to comply with the Court's order entered on that same date directing him to appear and testify before the grand jury. For the reasons stated in this Memorandum and Order, the Court finds that respondent has not shown just cause for his refusal to testify pursuant to the Order of this Court. Accordingly, it is hereby:

Ordered that Dominick Di Girlomo be confined for the term of the grand jury, or for eighteen months, whichever is shorter, or until such time as he is willing to comply with the Order of Court directing his appearance and testimony before the grand jury. Due to the substantial question of law presented by respondent, it is further

Ordered that respondent Dominick Di Girlomo be released on bail from the Court's Order of Confinement pending the determination of this matter on appeal to the Eighth Circuit Court of Appeals. Respondent is released on his personal recognizance on the conditions that he appear at all times as ordered by the Court and keep his counsel notified as to his whereabouts so that counsel can notify him when a Court appearance is required.

## STIPULATION

It is hereby stipulated and agreed between the United States of America, Movant, and Dominick Di Girlomo, Respondent, that:

1. This is an action under 28 U.S.C. § 1826 brought by the United States, Movant, for confinement of Respondent Dominick Di Girlomo.

2. That Dominick Di Girlomo appeared before the Federal Grand Jury for the Western District of Missouri pursuant to subpoena, wherein he refused to testify based upon his privilege against self-incrimination, as reflected by the attached grand jury transcript of August 14, 1974, Exhibit 1.

3. That on August 15, 1974, Dominick Di Girlomo appeared before the

United States District Court for the Western District of Missouri, as reflected in the attached hearing transcript of August 15, 1974, Exhibit 2. At that time a motion to compel his testimony was filed, with an accompanying letter of authorization (Exhibits 3 and 4), and a copy of the above described grand jury testimony of August 14, 1974.

4. That on August 16, 1974, Dominick Di Girlomo reappeared before the United States District Court for the Western District of Missouri, represented by retained counsel, Lawrence H. Pelofsky. At this time the above described letter of authorization, Exhibit 4, was received into evidence, as well as the grand jury transcript of August 14, 1974, Exhibit 1. At that time and after the evidentiary hearing and findings reflected in the attached hearing transcript of August 16, 1974, Exhibit 5, the Court entered the oral Order of immunity reflected therein and executed the written Order attached as Exhibit 6.

5. That on August 16, 1974, subsequent to the proceedings described in Paragraph 3 above, Dominick Di Girlomo reappeared before the Grand Jury and refused to testify based upon a claim that his rights under the Fourth Amendment to the Constitution were being violated by questioning based upon illegal electronic surveillance as reflected in the grand jury transcript of August 16, 1974, Exhibit 7.

6. That on October 22, 1974, Dominick Di Girlomo reappeared before the Grand Jury and refused to testify until promised a copy of any testimony he might give before the grand jury and based upon a claim that his rights under the Fourth Amendment to the Constitution and under 18 U.S.C. § 2515 and § 3504 were being violated by such questioning, as reflected in the grand jury transcript of October 22, 1974, Exhibit 8.

7. That the United States has been represented during the grand jury proceedings and courtroom appearances described above by Special Attorneys William E. Zleit, Gary Cornwell, William Tetrick and Philip Adams, whose letters purporting to appoint them and oaths of office were filed with the United States District Court for the Western District of Missouri on the dates indicated, and which appear as Exhibits 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18.

8. That the preceding Exhibits 1, 2, 5, 7 and 8 are true and accurate typewritten transcripts of stenotype notes made by Certified Shorthand Reporters Elaine Cannon and Bonnie Jeffries at the times and occasions described and are admitted as accurately reflecting the events recorded without further proof of authenticity or foundation.

9. The Assistant United States Attorneys serving upon the staff of United States Attorney Bert C. Hurn have been selected and interviewed by Mr. Hurn or his predecessor United States Attorneys for the Western District of Missouri.

10. Attorneys of the Kansas City Field Office of the Organized Crime and Racketeering Section are not so selected, and are interviewed and hired by officials of the Department of Justice in Washington and thereafter assigned to the Kansas City Field Office, Organized Crime and Racketeering Section, Criminal Division.

11. That Special Attorneys William Zleit, Gary Cornwell, William Tetrick and Philip Adams are not United States Attorneys appointed pursuant to 28 U.S.C. § 541.

12. That Special Attorneys William Zleit, Gary Cornwell, William Tetrick and Philip Adams are not Assistant United States Attorneys appointed under 28 U.S.C. § 542.

13. That Special Attorneys William Zleit, Gary Cornwell, William Tetrick and Philip Adams are assigned to and members of the Kansas City Field Office of the Organized Crime and Racketeering Section, Criminal Division, United States Department of Justice.

14. That Special Attorney Michael De Feo is the Attorney in Charge of the

Kansas City Field Office, Organized Crime and Racketeering Section.

15. That Michael De Feo is not a United States Attorney appointed pursuant to 28 U.S.C. § 541.

16. That Michael De Feo is not an Assistant United States Attorney appointed pursuant to 28 U.S.C. § 542.

17. That Special Attorneys William Zleit, Gary Cornwell, William Tetrick and Philip Adams are under the supervision of Michael De Feo, Attorney in Charge, Kansas City Field Office.

18. That Bert C. Hurn is the United States Attorney for the Western District of Missouri, appointed pursuant to 28 U.S.C. § 541.

19. That the stationery of the office of the United States Attorney for the Western District of Missouri is different from that utilized by the Kansas City Field Office of the Organized Crime and Racketeering Section.

20. That the budget of the Kansas City Field Office of the Organized Crime and Racketeering Section is separate from that of the United States Attorney for the Western District of Missouri, as are its physical quarters.

21. That examination of Dominick Di Girlomo before the Grand Jury was conducted by Special Attorneys of the Kansas City Field Office of the Organized Crime and Racketeering Section and not by the United States Attorney for the Western District of Missouri or a member of his staff, and as reflected by Exhibits 1, 7, 8.

22. That the geographic scope and activities of the Kansas City Field Office of the Organized Crime and Racketeering Section include districts other than the Western District of Missouri, specifically including but not limited to the District of Kansas.

23. That the letters of authorization customarily utilized for Special Attorneys of the Kansas City Field Office in these other districts are substantially identical in form and content to those filed in the Western District of Missouri.

24. That Special Attorneys of the Kansas City Field Office are employed as trial attorneys of the Department of Justice, all receive annual salaries in excess of $12,000, and receive no additional compensation under the letters purporting to appoint them as Special Attorneys.

25. That all motions and pleadings filed on behalf of the United States in these proceedings bear a signature purporting to be that of the United States Attorney for the Western District of Missouri, or of one of his Assistant United States Attorneys within the meaning of 28 U.S.C. § 542, the authenticity and due execution of which is not admitted.

26. That Special Attorneys of the Kansas City Field Office do not have and have not filed letters personally signed by the then Attorney General. Stipulated Exhibits 9–18 are not letters personally signed by the then Attorney General and Movant has no evidence to prove they were personally and individually considered by the Attorney General.

27. That Movant's counsel have requested from the Criminal Division of the Department of Justice any additional evidence of authorization of the Special Attorneys described above to appear and conduct proceedings in the Western District of Missouri, and have been furnished with none save certain payroll and job description records, upon which Movant does not rely as establishing the authorization of said Special Attorneys to appear and conduct proceedings in the Western District of Missouri.

28. The establishment and location of the Kansas City Field Office of the Organized Crime and Racketeering Section are not known to Movant or Respondent's counsel to be specifically mentioned in any regulation published in the Code of Federal Regulations.

29. Exhibit 20 is an accurate copy of a portion of the 1972 report of the Attorney General of the United States published by the United States Department of Justice.

30. Exhibit 21a is an accurate copy of pages 298–319 of the United States Government Manual, 1974–1975, published by the Office of the Federal Register.

31. That the following Exhibits are accurate copies of the reports, bills, statutes or publication reflected therein:

Exhibit 21—House Report No. 2901, April 4, 1906, together with Chapter 3935, June 30, 1906.

Exhibit 22—Chapter XXXVII, August 2, 1861, together with The Congressional Globe, July 11, 16, 31, 1861.

Exhibit 23—Ch. 121, 1869.

Exhibit 24—Ch. XXV, April 10, 1896, together with the Congressional Globe, April 8, 9 and 10, 1869.

Exhibit 25—Chap. CL, June 22, 1870.

Exhibit 26—The Congressional Globe, April 27 and 28, 1870.

Exhibit 27—Ch. 252, 1896.

Exhibit 28—Tit. 8, Sec. 354–370.

Exhibit 29—Ch. 24, 1919.

Exhibit 30—Ch. 174, April 17, 1930, and House Report No. 229.

Exhibit 31—Chapter 31, Title 28, together with Pages A58–A65, Revision of Title 28, United States Code.

Exhibit 32—Public Law 195, August 5, 1953.

32. The Kansas City Field Office of the Organized Crime and Racketeering Section does not receive specific written or oral instructions as to each individual concerning whom it conducts pre-indictment investigative activity.

33. That on November 26, 1974, the United States filed a Motion and Suggestions in Support Thereof For Confinement Under 28 U.S.C. § 1826, with a supporting affidavit of Special Attorney William Zleit, Exhibit 19.

34. That on January 10, 1975, the Honorable Elmo B. Hunter, United States District Judge, entered the Memorandum and Order attached as Exhibit 19a.

*Exhibits*

The admission of the following documents into evidence is hereby stipulated:

1. Grand jury transcript of Dominick Di Girlomo, August 14, 1974, accuracy of which is admitted.

2. Hearing transcript of August 15, 1974, accuracy of which is admitted.

3. Motion to compel testimony of Dominick Di Girlomo filed August 15, 1974, authenticity and filing of which is admitted.

4. Letter of authorization bearing signature "Henry E. Petersen" filed with Exhibit 3 above. Respondent denies the due execution of this document by the purported signator.

5. Hearing transcript of August 16, 1974, accuracy of which is admitted.

6. Written Order of this Court conferring immunity upon Dominick Di Girlomo, dated August 16, 1974, authenticity of which is admitted.

7. Grand Jury transcript of Dominick Di Girlomo, August 16, 1974, accuracy of which is admitted.

8. Grand Jury transcript of Dominick Di Girlomo, October 22, 1974, accuracy of which is admitted.

9. Oath of office of Special Attorney William Zleit filed January 10, 1973.

10. Accompanying letter of appointment dated January 2, 1973. Respondent denies the due execution of this document by the purported signator.

11. Oath of office of Special Attorney Gary Cornwell filed December 23, 1970.

12. Accompanying letter of appointment dated December 23, 1970. Respondent denies the due execution of this document by the purported signator.

13. Oath of office of Special Attorney Gary Cornwell filed August 13, 1974.

14. Accompanying letter of appointment dated August 2, 1974. Respondent denies the due execution of this document by the purported signator.

15. Oath of Office of Special Attorney William Tetrick filed August 27, 1974.

16. Accompanying letter of appointment dated August 9, 1974. Respondent denies the due execution of this document by the purported signator.

17. Oath of Office of Special Attorney Philip J. Adams filed August 3, 1973.

18. Accompanying letter of appointment dated June 25, 1973. Respondent denies the due execution of this document by the purported signator.

19. Motion, Suggestion for Confinement and Affidavit of Special Attorney William Zleit, dated November 26, 1974, the authenticity of which is admitted, but the contents of which are not admitted by Respondent.

19a. Court's Memorandum and Order of January 10, 1975.

20. Portion of 1972 Report of the Attorney General, published by the United States Department of Justice.

21. House Report No. 2901, April 4, 1906, together with Chapter 3935, June 30, 1906.

21a. Government Manual, 1974–1975, pages 298–319.

22. Chapter XXXVII, August 2, 1861, together with The Congressional Globe, July 11, 16, 31, 1861.

23. Ch. 121, 1869.

24. Ch. XXV, April 10, 1869, together with The Congressional Globe, April 8, 9 and 19, 1961.

25. Chap. CL, June 22, 1870.

26. The Congressional Globe, April 27 and 28, 1870.

27. Ch. 252, 1869.

28. Tit. 8, Sec. 354–370.

29. Ch. 24, 1919.

30. Ch. 174, April 17, 1930, and House Report No. 229.

31. Chapter 31, Title 28, together with Pages A58–A65, Revision of Title 28, United States Code.

32. Public Law 195, August 5, 1953.

33. Affidavit of Michael De Feo, originally signed and filed with Movant's Motion to Modify of January 21, 1975, the jurat of which not executed on that date and which is re-executed, sworn and filed on this date, the authenticity of which is admitted but the contents of which are not admitted by Respondent.