In re GRAND JURY INVESTIGATION.

Misc. No. 76–398.

United States District Court,
E. D. Pennsylvania.

Dec. 9, 1976.

Joel Harvey Slomsky, Philadelphia, Pa., for Stanley Apfelbaum.

David W. Marston, U. S. Atty., Joel M. Friedman, (Phila. Strike Force), Philadelphia, Pa., for United States.

## MEMORANDUM

BRODERICK, District Judge.

On December 7, 1976, this Court found Stanley A. Apfelbaum in civil contempt and ordered him confined pursuant to the provisions of 28 U.S.C. § 1826. Although the witness requested an *in camera* hearing, the hearing was held in open court. The policy of secrecy in connection with grand jury proceedings has been long established in the federal judicial system. It is generally conceded that the reasons for this policy of secrecy are: (1) to prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilty. *United States v. Rose*, 215 F.2d 617, 628 (3d Cir. 1954); *In re William H. Pflaumer & Sons, Inc.*, 53 F.R.D. 464, 469–70 (E.D.Pa.1971).

Federal Rule of Criminal Procedure 6(e) implements the policy of secrecy by mandating that grand jurors, attorneys for the Government and court reporters etc., shall not disclose matters occurring before the grand jury except when directed by the Court in conjunction with a judicial proceeding. In addition, Rule 4(c) of our Local Rules of Criminal Procedure specifically provides that the United States shall not disclose the identity of any grand jury witness, person under investigation, or specific grand jury investigation subject area in any

**804**

affidavit, motion or other paper filed. Local Rule of Criminal Procedure 4(c) further provides that such papers shall be filed with the Court *in camera.*

 However, where a witness is subpoenaed, appears before the grand jury, invokes his Constitutional right to take the Fifth Amendment, and the court grants him immunity, then in the event the witness determines that he will not testify, the law is clear that he is entitled to a hearing to determine whether he should be held in civil contempt and, if so found, sentenced to confinement until the witness agrees to testify before the grand jury. Said confinement, however, shall not exceed the term of the grand jury, including extensions, and in no event shall confinement exceed eighteen (18) months. The hearing to determine whether the witness is in contempt of court and should be confined pursuant to 28 U.S.C. § 1826 is not covered by the policy of secrecy. It should be a public hearing.

The Government's efforts to obtain the testimony of Mr. Apfelbaum first came to the Court's attention on September 27, 1976 when a subpoena was issued ordering him to appear as a witness before a grand jury empaneled by this Court. On October 18, 1976, at an *in camera* hearing, attended by the witness, Mr. Apfelbaum, and all counsel, the witness presented a motion to quash the subpoena. The Court denied that motion. At a second *in camera* hearing held on October 20, 1976, attended by the witness, Mr. Apfelbaum, and all counsel, the Court, having found that the witness had been called to testify before the grand jury and that he had invoked his privilege against self-incrimination, signed an Order which granted him immunity and ordered him to appear and testify before the grand jury on November 1, 1976. On November 1, 1976, the Court, having been advised *in camera* that Mr. Apfelbaum had refused to testify, set November 8, 1976, at 9:30 a. m. in Courtroom 10–B of this courthouse as the time and place of a hearing to determine whether he should be held in contempt of court and, if found in contempt, sentenced pursuant to 28 U.S.C. § 1826. On Novem-

ber 8, 1976, Mr. Apfelbaum and all counsel appeared in chambers, at which time the witness claimed that he was too ill to participate in a hearing. The Court granted the witness's request and continued the hearing until November 11, 1976 at 9:30 a. m.

On November 11, 1976, the Court was advised that Mr. Apfelbaum was physically unable to come to court and that he was undergoing treatment for diabetes, high blood pressure, and chest pains at the Roxborough Memorial Hospital. The hearing was again continued until November 15, 1976 at 1:30 p. m. The Court directed that Dr. Paul P. Slawek, Mr. Apfelbaum's physician, and Dr. John Kelly, a physician appointed by the Court to examine the witness, be present in court and testify concerning Mr. Apfelbaum's condition. On November 15, 1976, the Court was advised by all counsel that both Dr. Kelly and Dr. Slawek agreed that the witness was physically unable to attend the hearing, but that he would probably be able to testify on November 29, 1976. The hearing was therefore continued until November 29, 1976 at 4:00 p. m. On November 29, 1976, the Court was told that Mr. Apfelbaum had checked out of the Roxborough Memorial Hospital and had checked into Fairmount Farms.

It was on November 29, 1976 that the Government petitioned the Court for a bench warrant to arrest Mr. Apfelbaum. The Court ordered a hearing for December 1, 1976 at 4:00 p. m. to take testimony as to whether Mr. Apfelbaum was physically able and mentally competent to participate in the hearing which had been scheduled and continued on several previous occasions. At that hearing, Dr. Slawek testified that the witness had diabetes and that his blood sugar level was such that he should not be ordered into court to testify. The witness also called Dr. K. George Laquer, a psychiatrist, who testified that Mr. Apfelbaum was under his care at Fairmount Farms, that he was insane and unable to understand the proceedings against him and to properly assist in his own defense. The Government

called Dr. Kelly to the stand who gave his opinion that the diabetes of Mr. Apfelbaum was such that it would not be an undue risk to his health to order him into court and stated that the witness had been in the same diabetic condition for the past year. Dr. Kelly testified further that Mr. Apfelbaum's presence in the courtroom would not pose an immediate threat to his life. The Government also presented the testimony of a psychiatrist, Dr. Robert DiSilverio, who stated that he found no evidence of any psychiatric disorder that would render Mr. Apfelbaum incompetent to participate in the contempt proceedings. It was his opinion that Mr. Apfelbaum was competent to appear and participate in the proceedings.

Upon the representation of the attorney for the United States that Dr. Laquer wished to supplement his testimony, a hearing was held on December 6, 1976, at which Dr. Laquer testified that since the previous hearing he had performed tests and that it was now his opinion that Mr. Apfelbaum was not insane and was competent to understand any proceedings against him and to properly assist in his own defense. Dr. Laquer further testified that there had been improvement in Mr. Apfelbaum's physical condition in that his blood sugar level had declined, and his electrocardiogram readings were normal.

On December 7, 1976, the Court found that Mr. Apfelbaum was not insane, that he was able to understand the proceedings against him and to properly assist in his own defense and that his physical condition was such that to bring him into court for the purpose of said hearing would not be an undue risk to his health. The Court issued a bench warrant ordering that Mr. Apfelbaum be arrested and brought before the Court at 4:00 p. m. for a hearing to determine whether or not he was in contempt of court.

█ At the 4:00 p. m. hearing on December 7, 1976, the Government presented testimony that Mr. Apfelbaum, having been granted immunity and ordered to testify before the grand jury, refused to testify. Mr. Apfelbaum was given the opportunity to show "just cause" for not complying with this Court's Order of October 20, 1976, ordering him to testify. The only defense placed on the record at that time was his claim that the court reporter, Ms. Catherine Black, who recorded the grand jury testimony on November 1, 1976, was not authorized to be in the grand jury room. The witness presented no evidence to support this claim. While it may be true that the presence of unauthorized persons during the grand jury session in which a witness is called to testify would, if established, constitute "just cause" for a refusal to testify, see *United States v. Di Girlomo*, 393 F.Supp. 997, 1000 (D.C.Mo.1975), a presumption of regularity attaches to the grand jury's proceedings, and the party objecting to them has the burden of making a showing of irregularity. See *In re Grand Jury Proceedings; Jacqueline Schofield, Witness*, 486 F.2d 85, 92 (3d Cir. 1973). The witness requested that the hearing be continued to enable him to present evidence that Catherine Black was not authorized to be in the grand jury room as a court reporter. We denied the request to once again continue the hearing on the ground that the hearing had originally been scheduled for November 8, 1976, and had already been continued four times and the witness had ample time and notice to establish a "just cause" defense.

█ The Third Circuit, in an opinion handed down on November 23, 1976, discussed notice which must be afforded a witness to prepare for a civil contempt proceeding. *In re: Grand Jury Proceedings; Steve Bruno*, 545 F.2d 385 at 388 (3d Cir. 1976). Judge McGlynn, one of my learned colleagues, stated:

In our view, the right to a hearing and a reasonable time to prepare is implicit in the language of [28 U.S.C.] § 1826(a). The power of the Court to "summarily" punish for contempt is limited to those instances where the witness' refusal to respond is "without just cause." This language must be construed as affording the witness "the opportunity of presenting all defenses properly available to

him" . . . and, as a corollary, a reasonable time to prepare.

Mr. Apfelbaum received notice of the hearing on November 1, 1976. This Court finds that he and his counsel had more than reasonable time to prepare for the hearing which finally took place on December 7, 1976.

When the Court was about to order confinement, Mr. Apfelbaum's attorney called the Court's attention to a pleading filed with this Court on November 9, 1976 entitled "Witness Stanley Apfelbaum's Answer In Opposition to the Government's Petition for an Order Holding Him in Contempt of Court" and stated that this document contained additional reasons for the Court's consideration as to why the witness Stanley Apfelbaum should not be found in contempt and confined pursuant to 28 U.S.C. § 1826. The witness' claims, as set forth in the above captioned document, are summarized, and were disposed of, at the hearing as follows:

1. That the "Schofield" affidavit voluntarily filed by the Government in this matter did not sufficiently define the scope of the investigation and that the questions asked of the witness were not relevant to the investigation. The Court found that the affidavit was sufficient to define the scope and that the questions asked were relevant.

2. That the Government should have certified to the Court all of the evidence presently in its possession concerning the witness in order to insure that the grant of use immunity would not be violated. The Court ruled that the law as it presently exists, which places the burden on the Government to show that it obtained its evidence independently of the witness' testimony, gives adequate protection to the witness in the event he is subsequently indicted. *Kastigar v. United States*, 406 U.S. 441, 460–61 [92 S.Ct. 1653, 32 L.Ed.2d 212] (1972).

3. That the Court order that in the event the witness testified, he be given a copy of the transcript of his testimony which he would give before the grand jury. Counsel for the witness did not refer the Court to any cases or rules which required the Court to guarantee to a prospective witness before a grand jury a transcript of his testimony. Neither Rule 16(a)(1)(A) nor Rule 6 of the Federal Rules of Criminal Procedure mandates the Court to assure a copy of a transcript of a witness' own testimony as a condition precedent to his testifying before the grand jury. *United States v. Fitch*, 472 F.2d 548, 549 (9th Cir. 1973); *In re Grand Jury Witness Subpoenas*, 370 F.Supp. 1282, 1284 (S.D.Fla.1974).

4. That the witness should be permitted to review all of his statements, transcripts of his statements, or his conversations recorded with the consent of one person other than the witness, which were within the possession, custody or control of the Government. Mr. Apfelbaum did not present any cases to support his proposition that he was entitled to such copies, and failed to demonstrate sufficient justification for us to grant his request. *United States v. Fitch, supra*, at 549; *In re Bottari*, 453 F.2d 370, 371 (1st Cir. 1972).

The above enumerated contentions are identical to those presented to this Court as bases for Mr. Apfelbaum's motion to quash the subpoena. We denied these contentions on October 20, 1976 for the reasons already set forth. The witness presented no other evidence to establish "just cause" for failing to comply with our Order compelling him to testify.

Based on this record, on December 7, 1976 we determined that Stanley A. Apfelbaum was in civil contempt of this Court pursuant to 28 U.S.C. § 1826. We ordered that he be confined until such time as he agreed to testify before the grand jury, said confinement not to exceed the term of the grand jury, including extensions, but in no event should confinement exceed eighteen (18) months.

Mr. Apfelbaum immediately petitioned to be admitted to bail pending the determination of an appeal which he in-

tended to file. 28 U.S.C. § 1826(b) provides:

> No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay.

The Court denied bail pending appeal. The Court found that the appeal taken by the witness from the order of his confinement was "frivolous" and "taken for delay". The Court based its findings on the evidence and the law as summarized in this memorandum which is filed in lieu of findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.